WM. E. REISNER AND CAROL E. REISNER, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 74814. Filed September 27, 1960.

*G. Robert Brain, Esq.*, for the petitioners.
*Norman H. McNeil, Esq.*, for the respondent.

OPINION.

BLACK, *Judge:* Petitioner claims that he is entitled to use, for the purpose of computing depreciation thereon, the fair market value of the building located in Berlin, Germany, at the time of its recovery under the procedures for restitution of identifiable property to the victims of Nazi oppression. His claim is predicated upon the contention that the property was a war loss within the provisions of

section 1336 of the 1954 Code[1] and section 127(a)(2) of the 1939 Code.[2] We are satisfied that petitioner's property does not come within the provisions of section 127. Before property is subject to the treatment afforded under that section it must be established "[t]hat the property was in existence and owned by the taxpayer on the date war was declared." *Benjamin Abraham*, 9 T.C. 222. Where property was confiscated or escheated prior to the date war was declared, no war loss is sustained, *Rozenfeld* v. *Commissioner*, 181 F. 2d 388; *Ernest Adler*, 8 T.C. 726; *Mayer* v. *United States*, 111 F. Supp. 251. The question is whether, after the sale of the property in 1937 under the duress of discriminatory measures of the German Government, petitioner retained a sufficient interest to constitute the property subject to section 127. As to the sufficiency of the interest, the court said in *Mayer* v. *United States*, *supra* at 254:

The test which must be adopted in determining "sufficient interest" is a practical one. This identical question as to the nature of the test under section 127 was before the court in Rozenfeld v. Commissioner, 2 Cir., 181 F. 2d 388, 390, where the court stated:

"We understand from this that the test is a practical one, and does not depend upon an absolute forfeiture of all legal right. * * * The relevant consideration, as we understand the Supreme Court [referring to United States v. S. S. White Dental Co., 274 U.S. 398, 47 S. Ct. 598, 71 L. Ed. 1120], is not the legal consequences of the seizure, but how completely the owner is dispossessed: i.e., the remoteness of any recovery of the property or its proceeds."

Petitioner who sold his property in 1937 did not have any reasonable possibility of recovering the property until the promulgation on July 29, 1949, of Order No. 49, by the Allied Berlin Kommandatura. While article 13 of the order provides that "an order for restitution shall have the effect that the title, of the claimant or his predecessor in title, to any property the subject of an unjust deprivation shall be deemed not to have been divested," mere legal title to property of which one is dispossessed is insufficient to invoke application of section 127. *Rozenfeld* v. *Commissioner*, *supra*.

That section 127 is inapplicable, however, does not forthwith mean that respondent's determination of petitioner's basis in the Berlin property must be sustained. Article 13 of Order No. 49 provides

[1] SEC. 1336. BASIS OF RECOVERED PROPERTY.

(a) IN GENERAL.—The unadjusted basis of property recovered in respect of property considered as destroyed or seized under section 127(a) of the Internal Revenue Code of 1939 shall be determined under this section. Such basis shall be an amount equal to the fair market value of such property, determined as of the date of the recovery, * * *

[2] SEC. 127. WAR LOSSES.

(a) * * *

(2) PROPERTY IN ENEMY COUNTRIES.—Property within any country at war with the United States, or within an area under the control of any such country on the date war with such country was declared by the United States, shall be deemed to have been destroyed or seized on the date war with such country was declared by the United States.

that the effect of judgment in favor of claimant for restitution is that the claimant shall be deemed not to have been divested of title to the property. Although respondent asserts that this provision is remedial only, article 26 (subrogating claimants to claims of the former holders of the property against third parties), article 28 (entitling the claimant to net profits produced by the property between the original transfer and restitution), and article 35 (authorizing a successful claimant to terminate leases given by former holders) make it clear that a claimant was to be accorded the substantive rights of a holder of legal title for the period of unjust deprivation. The result of a successful action for restitution is reestablishment of a claimant's original interest in property, not acquisition of a new interest.

The general statutory rule is that the basis of property is its cost. Sec. 113(a), 1939 Code; sec. 1012, 1954 Code. An exception to the rule is that the basis of property acquired by inheritance is the fair market value of the property at acquisition. Sec. 113(a)(5), 1939 Code; sec. 1014, 1954 Code. When capital expenditures are made in regard to the property the basis shall be adjusted accordingly. Sec. 113(b)(1)(A), 1939 Code; sec. 1016(a)(1), 1954 Code. These are the statutory provisions applicable to the property acquired by petitioner and his brother upon the deaths of their father and mother, capitally improved by them in 1931, and title to which was reestablished in 1952. The problem arises here in determining the fair market value of the property in 1916, when the father died, and in 1926, when the mother died. No appraisals or valuations of the property were made at those times because none were needed. The record reveals the date the building was constructed and the tax valuations of the property in 1931 and 1935. We know something of the state and earning power of the building in 1931. We know the sale price of the building in 1937 and the amount of the mortgages on the property then outstanding.

The question, then, is whether, knowing these things but not specifically the fair market value of the property in 1916 and 1926, we are to deny petitioner any basis in excess of the admitted costs of reestablishing title to the property because we cannot determine the basis with that comfortable degree of accuracy which is always desirable. We cannot, under proper circumstances, avoid determination of the proper basis for computing a deduction merely because the task is difficult or the result inexact. Cf. *Benjamin Abraham, supra; Cohan v. Commissioner*, 39 F. 2d 540. We are satisfied that the building had a fair market value on the dates on which petitioner acquired his interests. We are further satisfied that petitioner and his brother expended a considerable amount in partitioning the apartments in the building in 1931. We know, and it is admitted, that petitioner and

his brother incurred costs in recovering the property. We, therefore, have concluded, and have so found, that the adjusted basis of the building to petitioner and his co-owner, as of January 1, 1954, was $46,068.16, or DM193,619.46. That adjusted basis, further increased by capital expenditures made in 1954, 1955, and 1956, as determined in our Findings of Fact, should be used in computing depreciation under Rule 50.

The second issue is whether all, or any part, of the amounts claimed as repair expenses may be deducted in arriving at the income derived from the property, one-half of which is attributable to petitioner, or whether, as respondent has determined, such amounts represent capital expenditures the cost of which must be added to the adjusted basis of the building and recovered through depreciation.

During the time petitioner and his brother were out of possession of the building, it suffered war damages and deterioration through wear and tear. For various reasons the damages and deterioration were not repaired and the elements wreaked further damage with the result that upon restitution the building was in a state of dilapidation, partially destroyed, partially untenantable, and the subject of numerous citations for violation of the local building code.

In support of his contention that all of the amounts expended in each of the taxable years in repairing and restoring the building should be allowed as deductions for repairs and maintenance, petitioner cites and relies upon *Illinois Merchants Trust Co., Executor*, 4 B.T.A. 103. Petitioner quotes the rule stated in that case, as follows:

In determining whether an expenditure is a capital one or is chargeable against operating income, it is necessary to bear in mind the purpose for which the expenditure was made. To repair is to restore to a sound state or to mend, while a replacement connotes a substitution. A repair is an expenditure for the purpose of keeping the property in an ordinarily efficient operating condition. It does not add to the value of the property, nor does it appreciably prolong its life. It merely keeps the property in an operating condition over its probable useful life for the uses for which it was acquired. Expenditures for that purpose are distinguishable from those for replacements, alterations, improvements or additions which prolong the life of the property, increase its value, or make it adaptable to a different use. The one is a maintenance charge, while the others are additions to capital investment which should not be applied against current earnings. * * *

Our Court has often cited and followed the rule laid down in the *Illinois Merchants Trust Co.* case and we think we should do so in the instant case.

There is considerable evidence in the record relative to the expenditures made on the building in the taxable years we have before us, 1954, 1955, and 1956. In fact, exhibits are in evidence which give complete statements of the expenditures on the building for the respective years and a brief explanation of the items involved. These

exhibits are entitled "Statement of Repairs." Also, petitioner gave considerable testimony concerning these expenditures and there are photographs attached to the stipulation of facts which illustrate to some extent the condition of the building from time to time. We have carefully considered all of this evidence in the record and in our Findings of Fact we have made findings as to what amount represented capital improvements in each of the taxable years and what amount represented repairs. The amount for capital improvements should be added to the adjusted basis of the building and recovered by way of depreciation. Petitioner's portion of the amounts expended for repairs should be allowed as deductions in the respective taxable years under section 212, I.R.C. 1954.

The third issue is presented by petitioner's claimed deduction of all the costs of the trip to Berlin in 1955. Respondent does not now deny the deductibility of the expenses of petitioner's trip to Berlin but insists that the expenses of travel by his wife and their medical expenses on the trip are not deductible as business expenses. Although respondent in his brief conceded a lesser amount, we have found and have so set forth in our Findings of Fact that petitioner's allocable share of travel expenses, without reference to medical expense, is $1,071.29. As for the remainder of the expenses, they represent the cost of travel by petitioner's wife and the costs of their medical care in Europe which the facts show were very considerable. Neither class of expenses is deductible under the circumstances of this case.

It is apparent from the record that the purpose of Carol's travel in Europe was to care for her ailing husband. Laudable as such a purpose is, it has long been settled that a taxpayer may not deduct the expenses of either a wife or a nurse who accompanies him on business travels. *George W. Megeath et al.*, 5 B.T.A. 1274. Only in the event that the presence of the wife serves a bona fide business purpose may the cost of her travel be deducted. Cf. *Alex Silverman*, 28 T.C. 1061.

On brief, petitioners contend alternatively that the expenses in question which are not deductible as business expenses are deductible as medical expenses under section 213(a), 1954 Code.[3] Petitioners have never heretofore made a claim that any part of the trip expenses is deductible as medical expenses; they made no claim for a medical expense deduction on their income tax return. Their petition makes no assignment of error that respondent in his determination of the deficiency for 1955 erred in not granting petitioners a deduction of part of the expenses of the European trip as medical expenses. The

---

[3] SEC. 213. MEDICAL, DENTAL, ETC., EXPENSES.

(a) ALLOWANCE OF DEDUCTION.—There shall be allowed as a deduction the following amounts of the expenses paid during the taxable year, not compensated for by insurance or otherwise, for medical care of the taxpayer, his spouse, or a dependent (as defined in section 152) :

petition nowhere says anything about medical expenses. An issue of this kind cannot properly be raised for the first time in the brief. But inasmuch as a part of the $4,817.36 expenditures in question was clearly ordinary and necessary business expenses in relation to the Berlin property, we hold that respondent erred in disallowing the claimed travel expense deduction to the extent of $1,071.29, and that petitioners have not established any right to claimed deductions in excess of that amount.

*Decision will be entered under Rule 50.*