CHARLES GUTWIRTH, ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 77881, 77884, 77952. Filed June 27, 1963.

*Maurice Austin, Leo A. Diamond,* and *Alex J. Soled,* for the petitioners.

*Stephen M. Miller* and *Warren S. Shine,* for the respondent.

---

[1] Proceedings of the following petitioners are consolidated herewith: Isidore Lipschutz, Docket No. 77884; and Albert Gutwirth, Docket No. 77952.

668

670

OPINION

RAUM, *Judge:* 1. *The Avenue du Margrave property.*—Petitioners' principal contention is that a war loss occurred under section 127 (a) (1) of the 1939 Code [2] with respect to the Avenue du Margrave property in February or March 1945 by reason of enemy bombs, that such loss was within the partnership's fiscal year ending January 31, 1946, and was therefore deductible by petitioners on their 1946 calendar year returns. The amount of the alleged loss is also sharply in dispute.

---

[2] SEC. 127. WAR LOSSES.

(a) CASES IN WHICH LOSS DEEMED SUSTAINED, AND TIME DEEMED SUSTAINED.—For the purposes of this chapter—

(1) PROPERTY NOT IN ENEMY COUNTRIES.—Property destroyed or seized on or after December 7, 1941, in the course of military or naval operations by the United States or any other country engaged in the present war shall be deemed to have been destroyed or seized on a date chosen by the taxpayer in the manner provided in paragraph (4), which falls between—

(A) the latest date, as established to the satisfaction of the Commissioner, on which such property may be considered as not destroyed or seized, and

(B) the earliest date, as established to the satisfaction of the Commissioner, on which such property may be considered as having already been destroyed or seized.

\* \* \* \* \* \* \*

(2) PROPERTY IN ENEMY COUNTRIES.—Property within any country at war with the United States, or within an area under the control of any such country on the date war with such country was declared by the United States, shall be deemed to have been destroyed or seized on the date war with such country was declared by the United States.

\* \* \* \* \* \* \*

(c) RECOVERIES.—

(1) GENERAL RULE.—Upon the recovery in the taxable year of any money or property in respect of property considered under subsection (a) as destroyed or seized in any prior taxable year, the amount of such recovery shall be included in gross income to the extent provided in paragraph (2), unless the provisions of paragraph (3) are applicable to the taxable year pursuant to an election made by the taxpayer under the provisions of paragraph (5).

676

In setting the stage for their principal contention petitioners argue first that the property was lost in 1941 under section 127(a) (2) when the United States declared war upon Germany, that it was recovered when the Germans were driven out of Antwerp in September 1944, and that the claimed loss occurred some 6 months thereafter. Cf. *Andrew P. Solt*, 19 T.C. 183. A vigorous controversy has developed between the parties as to whether the first step in this chain of reasoning can be established, the Government contending that the property was lost initially prior to the declaration of war in 1941. Cf. *Ernest Adler*, 8 T.C. 726; *Rozenfeld v. Commissioner*, 181 F. 2d 388 (C.A. 2); *Wyman v. United States*, 166 F. Supp. 766 (Ct. Cl.). Although the matter is by no means clear, we think that the facts in this case are more in line with *Abraham Albert Andriesse*, 12 T.C. 907, and *Benjamin Abraham*, 9 T.C. 222 (first issue), and if this were a dispositive issue we would be inclined to conclude upon this record that the initial loss had not occurred prior to the 1941 declaration of war so as to make section 127(a) (2) inapplicable. But this is not a dispositive issue, since petitioners argue in the alternative, and we agree,

(2) Inclusion in gross income.—

(A) Amount of Recovery.—The amount of the recovery of any money or property in respect of property considered under subsection (a) as destroyed or seized in any prior taxable year shall be an amount equal to the aggregate of such money and the fair market value of such property, determined as of the date of recovery.

(B) Amount of Gain Includible.—To the extent that the amount of the recovery plus the aggregate of the amounts of previous such recoveries do not exceed that part of the aggregate of the allowable deductions in prior taxable years on account of the destruction or seizure of property described in subsection (a) which did not result in a reduction of any tax of the taxpayer under this chapter or chapter 2, such amount shall not be includible in gross income and shall not be deemed gain upon the involuntary conversion of property as a result of its destruction or seizure. To the extent that such amount plus the aggregate of the amounts of previous such recoveries exceed that part of the aggregate of such deductions, which did not result in a reduction of any tax of the taxpayer under this chapter or chapter 2 and do not exceed that part of the aggregate of such deductions which did result in a reduction of any tax of the taxpayer under this chapter or chapter 2, such amount shall be included in gross income but shall not be deemed a gain upon the involuntary conversion of property as a result of its destruction or seizure. * * * For the purposes of this paragraph an allowable deduction for any taxable year on account of the destruction or seizure of property described in subsection (a) shall, to the extent not allowed in computing the tax of the taxpayer for such taxable year, be considered an allowable deduction which did not result in a reduction of any tax for the taxpayer under this chapter or chapter 2.

(3) Tax adjustment measured by prior benefits.—If the provisions of this paragraph are applicable to the taxable year pursuant to an election made by the taxpayer under the provisions of paragraph (5)—

(A) Amount of Recovery.—The amount of the recovery in the taxable year of any money or property in respect of property considered under subsection (a) as destroyed or seized in any prior taxable year shall be an amount equal to the aggregate of such money and the fair market value of such property, determined as of the date of the recovery. For the purpose of this paragraph, in the case of the recovery of the same property or interest considered under subsection (a) as destroyed or seized, the fair market value of such property or interest shall, at the option of the taxpayer, be considered an amount equal to the adjusted basis (for determining loss) of such property or interest in the hands of the taxpayer on the date such property or interest was considered under subsection (a) as destroyed or seized. * * *

that regardless of when the original loss occurred, if there was a recovery of the property in 1944 the loss occurring thereafter would be deductible. *William E. Reisner*, 34 T.C. 1122, so holds, and we follow it here.

The critical question in this regard is whether there was a recovery in 1944. The mere expulsion of the enemy from occupied territory ordinarily is not enough to establish a recovery. Cf. *Kenmore* v. *Commissioner*, 205 F. 2d 90 (C.A. 2), affirming 18 T.C. 754. But we have something more than that here. Not only do we have a finding as to Belgian law, made upon the basis of expert testimony, that on and after September 5, 1944, a property owner without any affirmative action on his part was regarded as being in full possession of his property rights to the same extent as prior to the German invasion in 1940, but also the evidence shows that petitioners' agent Brunschot had been in continuous possession of the property from 1939 until at least into the early part of 1945, looking after and protecting the interests of the true owners. This latter distinction was explicitly noted in *Kenmore* v. *Commissioner*, *supra* at 92.

We hold that there was a recovery in 1944, and we pass to consider two contentions made by the Government, first as to the time that the bomb damage occurred and second as to the amount deductible in respect thereof.

---

(B) Adjustment for Prior Tax Benefits.—That part of the amount of the recovery, in respect of any property considered under subsection (a) as destroyed or seized, which is not in excess of the allowable deductions in prior taxable years on account of such destruction or seizure of the property (the amount of such allowable deductions being first reduced by the aggregate amount of any prior recoveries in respect of the same property) shall be excluded from gross income for the taxable year of the recovery for the purpose of computing the tax under this chapter and chapter 2; but there shall be added to, and assessed and collected as a part of, the tax under this chapter for the taxable year of the recovery the total increase in the tax under this chapter and chapter 2 for all taxable years which would result by decreasing, in an amount equal to such part of the recovery so excluded, such deductions allowable in the prior taxable years with respect to the destruction or seizure of the property. Such increase in the tax for each such year so resulting shall be computed in accordance with regulations prescribed by the Secretary. * * *

\*　　\*　　\*　　\*　　\*　　\*　　\*

(5) ELECTION BY TAXPAYER FOR APPLICATION OF PARAGRAPH (3).—If the taxpayer elects to have the provisions of paragraph (3) applicable to any taxable year in which he recovered any money or property in respect of property considered under subsection (a) as destroyed or seized, the provisions of paragraph (3) shall be applicable to all taxable years of the taxpayer beginning after December 31, 1941, and such election, once made, shall be irrevocable. * * *

\*　　\*　　\*　　\*　　\*　　\*　　\*

(d) BASIS OF RECOVERED PROPERTY.—

\*　　\*　　\*　　\*　　\*　　\*　　\*

(2) PROPERTY RECOVERED IN TAXABLE YEAR TO WHICH SUBSECTION (c)(3) IS APPLICABLE.—In the case of a taxpayer who has made an election under the provisions of subsection (c)(5), the basis of property recovered shall be an amount equal to the value at which such property is included in the amount of the recovery under subsection (c)(3)(A) * * *

If the damage occurred prior to February 1, 1945, then it would of course fall within the partnership's fiscal year ending January 31, 1945, and would not be deductible on petitioners' 1946 returns. The evidence in this respect is not fully satisfactory, but we are reasonably satisfied on the record that the damage occurred after January 31, 1945, and our findings are in accord with that conclusion.[3]

The controversy in respect of the amount of the damage that is deductible revolves largely around the adjusted basis of the property. That there was in fact substantial physical damage is not in dispute. However, the amount of the original investment in 1922 and 1923, the amount of subsequent capital additions, the question whether the expenditures for such additions may be added to basis in this case, and whether there should be adjustments to basis for depreciation are all in dispute.

We have found as facts that the original investments in land, factory, and equipment in 1922 and 1923 were $6,600, $48,000, and $32,000, respectively; that subsequent capital additions and improvements to the property amounted to $32,000; that additional machinery and equipment were acquired at a cost of $40,000; and that paintings and oriental rugs were purchased for the executive offices at a cost of $20,000. The evidence consisted largely of estimates, and the findings reflect our best judgment in the circumstances, taking into account the applicable rates of exchange in effect at the various times the expenditures were made. Since petitioners could hardly be charged with fault in the circumstances of this case for the absence of pertinent records, we did not consider it appropriate to "bear heavily" against them for that reason in making our findings (cf. *Cohan* v. *Commissioner*, 39 F. 2d 540, 544 (C.A. 2)), but we have endeavored to make as realistic findings as possible on this record, bearing in mind that petitioners' evidence from time to time appeared to be shaded in their favor.

The Government has argued that there should not be any upward revisions to the original basis on account of subsequent capital additions, since these additions were treated as expenses in Belgium. We cannot accept that position. Regardless of how these additions were treated in Belgium years ago, they in fact represented capital expenditures, and the basis of the property must be adjusted to reflect such capital items.

On the other hand, we reject the petitioners' contention that there should be no downward adjustments to basis in respect of deprecia-

---

[3] In any event, section 127 (a) (1) (A) and (B) provides a certain amount of flexibility in fixing the date, and these provisions would justify treating the loss as having occurred after Jan. 31, 1945, on the basis of the evidence before us in relation to the election given the taxpayer to select a date falling between the earliest and latest possible dates under the statute.

tion. We have always required that basis be adjusted to reflect depreciation in circumstances such as these. See, e.g., *Benjamin Abraham*, 9 T.C. 222, 227. The contrary view would discriminate in favor of nonresident aliens owning property abroad as against resident taxpayers in identical situations. In the absence of a clear statutory command to that effect, we cannot assume that Congress intended any such discrimination.

The amount of depreciation has been difficult to determine on this record. Although we have made a finding that the expectable useful life of the building was 40 years, considerable difficulties have arisen in connection with other items, such as machinery. Not only was there no precision in fixing the dates of acquisition of much of the machinery, but there was substantial doubt as to its expectable useful life, and the extent to which it has from time to time been replaced as well as the dates of any such replacements. In these circumstances we could do little but assume on this record that there had been very substantial depreciation in respect thereof. On the other hand, it seems reasonable to conclude that there was only a comparatively small amount of depreciation in respect of the paintings and oriental rugs in the executive offices. We have endeavored to resolve these various matters by our finding that the adjusted basis of the entire factory, including its contents but exclusive of the land, had an adjusted basis of $83,400 in respect of which the bomb damage deduction must be determined. And after taking into account the fact that the entire Avenue du Margrave property, including land, was sold for $16,000, we have concluded that the partnership sustained a deductible loss in the amount of $74,000 during its fiscal year ending January 31, 1946.

2. *Lipschutz residence on Avenue de Belgique.*—Unlike the factory property, where Brunschot was in continuous possession, Lipschutz has failed to show that the residence had not been seized by the Germans prior to our declaration of war against Germany in December 1941. The couple in charge of the house had not been heard from after May 1940, and the record is silent as to what happened after that time. Cf. *Eric H. Heckett*, 8 T.C. 841, 845–846. However, as in the case of the factory property, the fact that petitioner may or may not have established a 1941 loss under section 127(a)(2) will not deprive him of a deduction in a later year in respect of a different and subsequent loss if he recovered the property prior to the second loss. *William E. Reisner*, 34 T.C. 1122. Was there such a recovery here?

The matter is not entirely free from doubt, but taking into account Belgian law, Nusbaum's visit to the property in January 1946, the fact that he presented himself to the British officer in charge as the representative of the owner and was shown about the premises pre-

sumably in that capacity, the fact that the British were paying rent that was ultimately turned over to Lipschutz—we think that on the whole these circumstances establish a recovery in 1946. Accordingly, Lipschutz is entitled to a deduction for any loss occurring thereafter that is allowable under the Code.

The deduction sought in respect of the residence is not a war loss. It is an ordinary casualty loss, based upon theft or vandalism (cf. *Burrell E. Davis*, 34 T.C. 586) or both in respect of the property occurring after January 1946. We are satisfied on this record that such losses did occur in 1946. We have no doubt, based upon Nusbaum's testimony which in general we found credible and upon inferences that may fairly be drawn therefrom, that the property had been looted and damaged during the period between his two visits in 1946. On the other hand, we are not satisfied that the entire loss in question occurred in 1946. It must be remembered that the Germans had been in possession of the property prior to the British, and we cannot realistically assume that it had been treated gently during the military occupation of both the Germans and the British prior to 1946. True, the building and much of its contents appeared to be in order as a functioning unit when Nusbaum saw it in January 1946, but we cannot find that all the components of the claimed loss were due to events occurring in 1946. Doing the best we can with the materials at hand we have found that petitioner Lipschutz sustained deductible losses in 1946 in respect of the Avenue de Belgique residence in the aggregate amount of $7,000 by reason of acts of theft or vandalism or both occurring in that year.

*Decisions will be entered under Rule 50.*