HENRIETTA B. WITHINGTON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Withington v. Commissioner
Docket No. 8580-72
United States Tax Court
T.C. Memo 1975-134; 1975 Tax Ct. Memo LEXIS 241; 34 T.C.M. (CCH) 623; T.C.M. (RIA) 750134; May 7, 1975, Filed Henrietta B. Withington, pro se. Randolph A. Monsur, for the respondent. GOFFE
MEMORANDUM *242 FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined a $1,813 deficiency in petitioner's Federal income tax for the taxable year 1970. Certain adjustments made by the Commissioner are mechanical and rest upon our determination of whether petitioner sustained a casualty loss within the meaning of section 165[1] to her former personal residence in 1970. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and exhibits are incorporated by this reference. At the time of filing her petition in this case, Petitioner Henrietta B. Withington was a resident of Tulsa, Oklahoma. She filed her individual Federal income tax return for the taxable year 1970 with the Internal Revenue Service Center, Cincinnati, Ohio. In 1925, petitioner and her late husband purchased a residence at 3816 Reading Road, Cincinnati, Ohio. In the late 1950's or early 1960's, minority groups began to migrate into the general area of the petitioner's Reading Road residence. The influx of minority groups into the Reading *243 Road area caused a general decline in property values in the area. The petitioner has never attempted to sell or rent the residence at 3816 Reading Road. Near the beginning of 1967, petitioner vacated the residence at 3816 Reading Road. When petitioner moved from her home in 1967, it was an older home which had not been redecorated for several years. Between the date in 1967 that Henrietta B. Withington vacated the Reading Road residence, but prior to any civil disorders in the area in 1967, the vacant Reading Road residence was vandalized. At various times from late 1967 through 1968, the general area of the residence at 3816 Reading Road was the scene of sporadic civil disorders. In 1967 or 1968, the petitioner's home was extensively vandalized. The vandals removed all the plumbing, pulled out the wiring, removed the light fixtures, knocked out the banister and cut up the stairway severely damaging the structure. It was during this period that the major damage to the property was done. In addition to the above-described extensive damage suffered incident to civil disorders in 1967 or 1968, petitioner's residence deteriorated over the period from 1968 to 1970 as a result of *244 numerous, continual abuses by local residents and vandals who repeatedly damaged the property in isolated acts unconnected with riot activity. On September 21, 1970, the petitioner's residence was condemned as a public nuisance and ordered torn down by the City of Cincinnati. In compliance with that order, the petitioner had her residence razed in 1970 at a cost of $1,500. On her 1970 individual Federal income tax return, petitioner claimed a $20,550 casualty loss caused by vandalism to her former personal residence located at 3816 Reading Road, Cincinnati, Ohio. The petitioner computed the casualty loss as follows: Value of Residence before casualty
$31,160
Value of Residence after casualty
12,010
Difference
19,150
Cost to tear down Residence
1,500
Casualty Loss
20,650
Minus the Statutory Limitation
100
Casualty Loss claimed on Return
$20,550
The values used by the petitioner in determining the casualty loss deduction taken on her 1970 return were derived from ad valorem tax valuations of the Hamilton County, Ohio Treasurer. Such valuations for the years 1968 through 1970 are as follows: VALUATIONS
Total of Land Year
plus Improvements
Land
Improvements
1968
$31,160
$13,080
$18,080
1969
12,010
3,570
8,440
1970
12,010
3,570
8,440
*245 At the time her 1970 return was prepared, petitioner filed an amended individual Federal income tax return for 1967 claiming a refund of $1,101.96 based on a 1970 net operating loss carryback computed as follows: Casualty Loss to Residence in 1970
$20,650
Less Statutory Limitation
100
Casualty Loss to Residence claimed
on 1970 Return
20,550
Add Itemized deductions claimed on
1970 Return
794
$21,349
Less adjusted Gross Income on 1970
Return
12,867
Net Operating Loss Carryback to
1967
$ 8,842
In his statutory notice of deficiency, the Commissioner determined that the petitioner was not entitled to a casualty loss deduction in 1970 explaining in relevant part as follows: The deduction of $20,550 as a casualty loss due to vandalism to your residence is not allowable because you have neither established that one or more acts of vandalism, caused by agencies outside your control, resulted in sudden and unexpected damage or destruction to your property during the year 1970; nor the amount or amounts of such casualty loss which are measured by the lesser of an amount which is equal to the fair market value of the property immediately before the casualty *246 reduced by the fair market value of the property immediately after the casualty or the amount of the adjusted basis of the property for determining a loss or other disposition of the property. Since the denial of this $20,550 casualty loss eliminates the net operating loss which you claimed for the year 1970, there is no net operating loss carryback to the taxable year 1967 and the amount carried back is eliminated. ULTIMATE FINDINGS OF FACT The damage to the petitioner's former residence caused by vandalism occurred largely in 1967 and 1968. The petitioner's residence was not damaged by vandalism in 1970 in the amount of $20,650, or in any established or substantial amount. The petitioner did not suffer a casualty loss in 1970 in the amount of $20,650 or in any established amount. OPINION The principal issue is whether the petitioner incurred a deductible casualty loss to her former personal residence in 1970. The issue is factual and the petitioner has the burden of proof. William E. Aksomitas,50 T.C. 679 (1968). Section 165 provides in relevant part as follows: SEC. 165. LOSSES (a) GENERAL RULE.--There shall be allowed as a deduction any loss sustained *247 during the taxable year and not compensated for by insurance or otherwise. (b) AMOUNT OF DEDUCTION.--For purposes of subsection (a), the basis for determining the amount of the deduction for any loss shall be the adjusted basis provided in section 1011 for determining the loss from the sale or other disposition of property. (c) LIMITATION ON LOSSES OF INDIVIDUALS.--In the case of an individual, the deduction under subsection (a) shall be limited to-- (1) losses incurred in a trade or business; (2) losses incurred in any transaction entered into for profit, though not connected with a trade or business; and (3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. A loss described in this paragraph shall be allowed only to the extent that the amount of loss to such individual arising from each casualty, or from each theft, exceeds $100. * * * Section 1.165-7, Income Tax Regs., states in relevant part as follows: Sec. 1.165-7 Casualty losses. (a) In general--(1) Allowance of deduction. Except as otherwise provided in paragraphs (b)(4) and (c) of this section, any loss arising from *248 fire, storm, shipwreck, or other casualty is allowable as a deduction under section 165(a) for the taxable year in which the loss is sustained. * * * The manner of determining the amount of a casualty loss allowable as a deduction in computing taxable income under section 63 is the same whether the loss has been incurred in a trade or business or in any transaction entered into for profit, or whether it has been a loss of property not connected with a trade or business and not incurred in any transaction entered into for profit. The amount of a casualty loss shall be determined in accordance with paragraph (b) of this section. * * * (2) Method of valuation. (i) In determining the amount of loss deductible under this section, the fair market value of the property immediately before and immediately after the casualty shall generally be ascertained by competent appraisal. This appraisal must recognize the effects of any general market decline affecting undamaged as well as damaged property which may occur simultaneously with the casualty, in order that any deduction under this section shall be limited to the actual loss resulting from damage to the property. * * * * * (b) Amount *249 deductible--(1) General rule. In the case of any casualty loss whether or not incurred in a trade or business or in any transaction entered into for profit, the amount of loss to be taken into account for purposes of section 165(a) shall be the lesser of either-- (i) The amount which is equal to the fair market value of the property immediately before the casualty reduced by the fair market value of the property immediately after the casualty; or (ii) The amount of the adjusted basis prescribed in section 1.1011-1 for determining the loss from the sale or other disposition of the property involved. * * * * * (2) * * * (ii) In determining a casualty loss involving real property and improvements thereon not used in a trade or business or in any transaction entered into for profit, the improvements (such as buildings and ornamental trees and shrubbery) to the property damaged or destroyed shall be considered an integral part of the property, for purposes of subparagraph (1) of this paragraph, and no separate basis need be apportioned to such improvements. * * * * * (4) Limitation on certain losses sustained by individuals after December 31, 1963. ( i) Pursuant to *250 section 165(c)(3), the deduction allowable under section 165(a) in respect of a loss sustained-- (a) After December 31, 1963, in a taxable year ending after such date, (b) In respect of property not used in a trade or business or for income producing purposes, and (c) From a single casualty shall be limited to that portion of the loss which is in excess of $100. The nondeductibility of the first $100 of loss applies to a loss sustained after December 31, 1963, without regard to when the casualty occurred. * * *. Petitioner contends that she suffered a casualty loss to her former personal residence as a result of continual riot vandalism beginning in 1967 and ending in 1970 when the residence was torn down. It is not disputed that a loss caused by vandalism comes within the meaning of "other casualty" as provided in section 165(c)(3). Burrell E. Davis,34 T.C. 586 (1960), acq. 1963-2 C.B. 4. However, respondent argues that petitioner has failed to prove the elements necessary to entitle her to a deduction under section 165(a), Internal Revenue Code of 1954, and section 1.165-7, Income Tax Regs. We agree with respondent. *251 With a few exceptions not here relevant, a casualty loss must be deducted in the year in which it is sustained. Robert L. Hunter,46 T.C. 477 (1966); Charles Gutwirth,40 T.C. 666 (1963). Petitioner's contention that there was continual riot vandalism prevalent in the locale of her former residence from June 1967 through September 1970, is not supported by the record. Except for 1967 and 1968, the record is void of any evidence of widespread civil disorders in the vicinity of the petitioner's residence. In fact, the evidence, including the testimony of the petitioner and her son, indicates that most of the damage to the residence occurred during riots which occurred in 1967 or 1968, not 1970. After suffering extensive damage incident to riots which occurred in 1967 or 1968, the petitioner's former residence deteriorated over the period from 1968 to 1970 as a result of numerous, continual abuses by local residents and vandals who repeatedly damaged the property in isolated acts unconnected with riot activity. However, the petitioner has failed to prove that any specific casualty occurred on a specific date and resulted in a loss in 1970. And, assuming *252 arguendo that petitioner's former residence suffered numerous, isolated acts of vandalism in 1970, each casualty loss suffered as a result of such acts in 1970 must be identified because section 165(c)(3) sets a $100 floor on each casualty suffered by an individual with respect to nonbusiness property. From what has already been said, it is apparent that the method used by petitioner to determine the amount of the alleged casualty loss is erroneous and not authorized by section 165 or section 1.165-7, Income Tax Regs. And, assuming that the petitioner had not failed to establish the necessary elements previously discussed, she coult not prevail on the record before us using the authorized method for computing loss because there is no evidence that the value of the residence declined in 1970. Section 1.165-7(b), Income Tax Regs.
Decision will be entered for the respondent.
Footnotes
1. All statutory references are to sections of the Internal Revenue Code of 1954 in effect during the years in issue, unless otherwise noted.↩