DAVID C. RUTTENBERG AND SARAJEAN RUTTENBERG, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; DAVID W. RUTTENBERG AND MARILYN G. RUTTENBERG, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ruttenberg v. Commissioner
Docket Nos. 14529-82, 14530-82.
United States Tax Court
T.C. Memo 1986-414; 1986 Tax Ct. Memo LEXIS 196; 52 T.C.M. (CCH) 370; T.C.M. (RIA) 86414; September 3, 1986. Steven D. Lustig, for the petitioners. Thomas J. Kane, for the respondent. PARKER
MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: In these consolidated cases, respondent determined deficiencies in petitioners' Federal income tax as follows: Petitioners
Year
Deficiency
David C. and Sarajean
1978
$24,389
Ruttenberg
David W. and Marilyn G.
1978
30,037
Ruttenberg
*197 After a concession, the issue remaining for decision is whether a portion of the expenditures incurred in the renovation of two apartment buildings was repair expense currently deductible under section 162[1] or part of a general plan of improvement and rehabilitation which must be capitalized. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. During 1978, David C. Ruttenberg and Sarajean Ruttenberg, husband and wife, resided in Chicago, Illinois. During 1978, David W. and Marilyn G. Ruttenberg, husband and wife, also resided in Chicago, Illinois. David W. Ruttenberg (David or petitioner) is the son of David D. and Sarajean Ruttenberg (the mother or petitioner). Both David and his father are attorneys. David is well experienced in the urban real estate business, including the purchase and operation of both residential *198 and commercial real estate. David and his mother (referred to jointly as petitioners herein) engaged in the real estate transactions involved in this case. In 1977, two Illinois land trusts in which David and his mother each had a 50 percent beneficial interest purchased the apartment buildings at 3507-3513 North Racine Avenue (hereinafter the Middle Racine building) and 3517-3525 North Racine Avenue (hereinafter the Eddy-Racine building). The Middle Racine building was purchased on or about June 1, 1977, and cost $200,000, of which $176,000 was allocated to the basis of the building. The Eddy-Racine building was purchased on or before May 1, 1977, and cost $260,000, of which $228,800 was allocated to the basis of the building. At all times during 1978, David and his mother each owned a 50 percent interest in both properties as tenants in common and not as joint tenants. Petitioners and other members of the Ruttenberg family had been purchasing and operating small apartment buildings since the 1950's. The Ruttenberg family members, in addition to purchasing a variety of apartment buildings, had also purchased shopping centers and some small office buildings. David had personally *199 overseen repairs and renovations on more than 500 apartments, more than 200,000 square feet of office space, and over 200,000 square feet of shopping centers. During the period 1975-1976, the Ruttenbergs expanded their real estate operations from residential properties in the Lincoln Park and DePaul areas of Chicago to contiguous, less expensive areas where they could purchase apartment buildings at lower prices, upgrade them, and rent them at higher prices than before renovation, comparable to but still a little lower than those prices prevailing in the Lincoln Park and DePaul areas. Thus, by 1977 the Ruttenbergs had purchased some seven apartment buildings, from six units up to 33 units, in the Wrigleyville area, including the only other building on the block containing the Middle Racine and the Eddy-Racine buildings. This third building, located at 3501-3503 North Racine Avenue/1150-1156 West Cornelia Avenue, underwent extensive renovations during 1977. Petitioners purchased the Middle Racine and the Eddy-Racine buildings in 1977 in continuation of the plan to attract younger tenants with higher incomes to Wrigleyville, an area where older, blue collar tenants had previously *200 lived. David and his mother operated the two buildings involved in this case as informed partnerships, agreeing orally to share profits and losses equally. From the time of acquisition in 1977 and throughout 1978, Jerome H. Meyer & Co. managed the apartment buildings pursuant to a written agreement between David and that company that covered these buildings as well as some 17 other buildings. Jerome H. Meyer & Co. was a general manager whose functions included the collection of rents and the disbursement of checks for any costs incurred during the day-to-day operation and renovation of the apartment buildings. The management company kept detailed records in the form of a management statement of receipts and disbursements for each building each month. All expenditures for both buildings, both the admittedly capital expenses and expenses in dispute in this case, were recorded on these monthly statements. During 1978, David directed and caused to be made significant renovations at both apartment buildings. Usually, on his way downtown to his law office, David stopped by the buildings about eight o'clock in the morning to direct the various tradesmen working that day. David was *201 familiar with the work of most of the various tradesmen he employed, since they had worked on other Ruttenberg family projects. Because David and his family had had only a limited opportunity to inspect these two apartment buildings prior to purchase, the extent of the renovations may have exceeced petitioners' initial expectations. However, the record does not indicate the usual range of expenditures the Ruttenbergs incurred in renovating buildings they had purchased in the Wrigleyville area. Whether or not the extent of the necessary renovations may have exceeded petitioners' original expectations, most of the expenditures in this case were admittedly capital in nature. [2]
*202 The renovation work on both apartment buildings was extensive. While petitioners may have tried to maintain some cash flow from some apartments that were occupied by tenants from the prior ownership, most of the work took place while the apartment buildings were largely vacant. Renovations on the Eddy-Racine building began in 1977 and continued over to 1978. The record does not disclose the nature of the work performed in 1977 or the cost thereof. Except for one apartment, the Eddy-Racine building was vacant the first three months of 1978. Most of the preexisting leases on the apartments in the Middle Racine building expired in April of 1978, and on or before that time, the apartments were vacant and the major renovations were under way in that building. Most of the apartments in that building remained vacant until September of 1978. The interior of each apartment had work done in it when it was vacated by the tenants who were holdovers from the prior ownership, usually when the leases expired. When work in each apartment had been completed, the apartment was available to be relet at the increased rental amount. Generally that occurred about April or May of 1978 for the *203 Eddy-Racine building and September of 1978 for the Middle Racine building. Twenty of the 32 units in the Eddy-Racine building had been completed by May 1978. Work in the common areas of both buildings was done on a continuing basis throughout 1978. The plumbing and wiring of both buildings were largely replaced. The boiler in the Eddy-Racine building was removed and independent electrical heating units were installed in each apartment. This required new electric service to the building with separate breaker boxes and metering services. The plumbing risers in the Eddy-Racine building were replaced, requiring extensive plastering in the bathrooms and kitchens. During 1978 the roof of the Eddy-Racine building leaked after completion of most of the interior renovations, requiring some of the work to have to be done over again. Both buildings received new appliances in almost every apartment. New cabinets, countertops, and sinks were installed in the kitchens of all the apartments. Throughout both buildings, many fixtures and structures did not work properly. For example, both buildings contained warped doors, malfunctioning window frames and sashes, broken glass, improperly maintained *204 floors, and malfunctioning electrical outlets that had to be corrected. Both buildings required extensive painting, plastering, and drywall work. Carpentry work in both buildings included framing for kitchen cabinets and countertops, floors, and framing for new heating and airconditioning systems. In 1978, the classified section of the Chicago Tribune listed both apartment buildings as completely remodeled. After the renovations, David obtained appraisals of the fair market value of both apartment buildings as required to secure long-term mortgage financing. The Middle Racine building was apparaised at a fair market value of $586,000 and the Eddy-Racine building at $720,000, representing an increase over the original purchase price of 293 percent and 277 percent, respectively. Relying on the records maintained by Jerome H. Meyer & Co., David separated the renovation expenditures into two categories: capital expenditures which were fully capitalized and what he called "housekeeping expenditures" which were partially capitalized and partially deducted as ordinary and necessary business expenses. David made his allocation of the "housekeeping expenditures" based on the increased *205 fair market value of the apartment building as measured by the increase in rent after completion of the renovation. At the Middle Racine building, the average rent after the renovation increased from $165 to $280 per month, an increase of 69.7 percent. Accordingly, based roughly on this percentage increase, of the $239,435.14 which was expended for material and labor for work not related to a previously capitalized cost, petitioners capitalized $165,464.14 of that amount and deducted the balance of $73,971 as a current expense. The treatment of this $73,971 is in dispute in this case. During 1978, petitioners spent a total of $303,872 on the Middle Racine building and characterized the expenses as follows: Description
Capitalized
Deducted
New appliances
$48,918
Electrical
28,150
Plumbing and heating
(including new heating
system)
55,519
Carpentry
27,000
$17,291
Plaster and lathe
20,025
12,933
New tile
7,200
Masonry
9,200
New porches and Floors
8,527
New windows
6,195
New ceilings
2,705
General repairs
16,462
Electrical
7,561
Roof
140
Painting
4,124
Cement and glazing
3,331
Appliances
1,988
Windows, shades,
screens and floor
6,775
Plumbing
9,422
Ceilings and walls
5,901
Miscellaneous
4,505
Totals
$229,901
$73,971
*206 in addition petitioners claimed $83,092 in ordinary and necessary business expenses for the Middle Racine building for the following items: Advertising
$1,109
Cleaning and Hauling
3,241
Commissions
500
Gardening
157
Heating, fuel
818
Insurance
3,442
Interest
23,249
Legal and accounting
380
Maintenance
2,808
Management fees
2,107
Miscellaneous expense
146
Office expense
509
Pest control
225
Salaries
7,221
Supplies
14,039
Taxes-property
13,683
Taxes-payroll
188
Utilities
8,872
Pension & welfare fund
303
Trust fees
55
Bank fees
40
Total other expenses
$83,092
Petitioners' informal partnership which operated the Middle Racine apartment building claimed an ordinary loss of $151,780 on its 1978 partnership information return which was filed on April 16, 1979. This loss was distributed equally to petitioners. David followed the same procedure for allocating the so-called "housekeeping expenditures" for the Eddy-Racine building. There the average rent after the renovation increased from $165 per month to $260 per month, an increase of 57.6 percent. Accordingly, based on this percentage increase, of the $95,910.58 which *207 was expended for material and labor for work unrelated to a previously capitalized cost, petitioners capitalized $58,130 of that amount and deducted the balance of $37,781 ($37,780.58) as ordinary and necessary business expenses. The treatment of this $37,781 is in dispute in this case. During 1978, petitioners spent a total of $201,148 on the Eddy-Racine building and characterized the expenses as follows: Description
Capitalized
Deducted
New appliances
$ 34,147
Electrical
26,185
Plumbing and heating
(including new
heating system)
24,527
Carpentry
21,668
$10,834
Plaster and lathe
14,721
7,360
New tile
6,605
Masonry
5,208
New porches
3,801
New windows
2,602
New carpeting
2,844
New ceiling
1,344
New shades/screens
2,760
Fireplaces
1,920
General repairs
15,035
Roof
3,007
Air conditioning
1,638
Cement and glazing
1,363
Appliances
497
Windows, shades, screens
2,681
Floor
1,769
Woodwork
4,735
Supplies
Locks and keys
399
Carpentry
2,467
Building
759
Paint
272
Total
$163,367
$37,781
In addition, petitioners claimed $111,778 in ordinary and necessary business expenses for the following *208 items: Advertising
$1,737
Cleaning and hauling
5,853
Gardening
1,621
Heating, fuel
357
Insurance
5,213
Interest
47,604
Legal and accounting
520
Maintenance
9,510
Management fees
4,396
Miscellaneous expense
128
Salaries
11,921
Supplies
6,992
Taxes-property
10,887
Taxes-payroll
238
Telephone
65
Utilities
3,785
Janitor pension
387
Sewerage
Other fees
293
Loan & finance costs
211
Total other expenses
[3] $111,778
Petitioners' informal partnership which operated the Eddy-Racine building claimed an ordinary loss of $122,552 on its 1978 partnership information return which was filed on April 16, 1979. The loss was distributed equally to petitioners.
In 1980, after an audit of both partnership returns for 1978, respondent disallowed the treatment of the so-called *209 housekeeping expenses. As a result, on March 26, 1982, David W. and Marilyn G. Ruttenberg received a notice of deficiency for 1978 in the amount of $30,037. On the same day, David C. and Sarajean Ruttenberg received a notice of deficiency for 1978 in the amount of $24,389. OPINION The sole issue for decision is whether a portion of the so-called "housekeeping expenses" are currently deductible under section 162, as petitioners contend, or are part of a general plan of renovation and improvement of the two apartment buildings that must be capitalized under section 263, as respondent contends. Petitioners bear the burden of proof. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a). Petitioners purchased two apartment buildings in the Wrigleyville area of Chicago, the Middle Racine and the Eddy-Racine buildings. Petitioners and other Ruttenberg family members had previously expanded their urban real estate business from the Lincoln Park and DePaul areas of Chicago into the contiguous, less expensive Wrigleyville area, with the purchase of some seven oher apartment *210 buildings in Wrigleyville in the period from 1975 to 1977. The Ruttenbergs purchased apartment buildings in Wrigleyville, renovated them, and tried to attract younger professionals with higher incomes into this area which had formerly housed older, blue collar tenants. Petitioners' purchase of the Middle Racine and Eddy-Racine buildings was a continuation of that effort. During 1978, petitioners completed major renovations of both apartment buildings. Petitioners spent $303,872 on the Middle Racine building and $201,148 on the Eddy-Racine building, these expenditures representing 152 percent and 77 percent, respectively, of the original purchase price of the buildings. Of those total expenditures, petitioners treated $239,435.14 at the Middle Racine building and $95,910.58 at the Eddy-Racine building as what they called "housekeeping expenses," which petitioners partially capitalized and partially deducted as ordinary and necessary business expenses. Petitioners made that allocation of the "housekeeping expenses" based on the percentage of increase in the rents before and after the renovations. For example, the rent for an apartment at the Middle Racine building increased from *211 $165 to $280 per month, an increase of 69.7 percent. Thus, of the $239,435.14 "housekeeping expenses" for that building, petitioners capitalized $165,464.14 of that amount, roughly 69 to 70 percent, and deducted the balance of $73,971. Petitioners made a similar allocation for the Eddy-Racine building expenses. Thus, petitioners deducted $73,971 of the "housekeeping expenses" at the Middle Racine building and $37,781 of the "housekeeping expenses" at the Eddy-Racine building. These are the amounts in dispute in this case. Whether an expense is deductible or must be capitalized is a question of fact. Plainfield-Union Water Co. v. Commissioner,39 T.C. 333, 337 (1962). Expenses in the nature of a repair keep something in ordinary operating condition and do not add value to the asset. Section 1.162-4, Income Tax Regs.; Bloomfield Steamship Co. v. Commissioner,33 T.C. 75, 84-85 (1959), affd. per curiam 285 F.2d 431 (5th Cir. 1961); Jones v. Commissioner,24 T.C. 563, 568 (1955), affd. 242 F.2d 616 (5th Cir. 1957); *212 Illinois Merchants Trust Co. v. Commissioner,4 B.T.A. 103, 106-107 (1926). In contrast, capital expenditures create a new asset having a useful life of more than one year. Section 1.263(a)-1, 2, Income Tax Regs. The Court in Illinois Merchants Trust Co. outlined the distinction between a capital expense and a deductible business expense as follows: To repair is to restore to a sound state or to mend, while a replacement connotes a substitution. A repair is an expenditure for the purpose of keeping the property in an ordinarily efficient operating condition. It does not add to the value of the property, nor does it appreciably prolong its life. It merely keeps the property in an operating condition over its probable useful life for the uses for which it was acquired. Expenditures for that purpose are distinguishable from those for replacements, alterations, improvements or additions which prolong the life of the property, increase its value, or make it adaptable to a different use. The one is a maintenance charge, while the others are additions to capital investment *213 which should not be applied against current earnings. * * * [Illinois Merchants Trust Co. v. Commissioner,supra,4 B.T.A. at 106.] Expenses incurred as part of a plan of capital improvement must be capitalized even though the same expense if incurred separately would be deductible as an ordinary and necessary business expense. United States v. Wehrli,400 F.2d 686 (10th Cir. 1968); Stoeltzing v. Commissioner,266 F.2d 374 (3d Cir. 1959); Jones v. Commissioner,242 F.2d 616 (5th Cir. 1957); Cowell v. Commissioner,18 B.T.A. 997 (1930). [4] Unanticipated expenses that would be deductible as a business expense if incurred in isolation must be capitalized when incurred pursuant to a plan of rehabilitation. California Casket Co. v. Commissioner,19 T.C. 32 (1952). [5] Whether there is a plan of capital improvement is a question of fact. United States v. Wehrli,supra;Home News Publishing Co. v. Commissioner,18 B.T.A. 1008 (1930). *214 Petitioners argue that Cowell v. Commissioner,supra, limits the plan doctrine to taxpayers whose records do not support an accurate allocation between sections 162 and 263. While petitioners insist that the Court must look at this case on an item-by-item basis and decide on an item-by-item basis whether the particular expense is a currently deductible repair expense or a capital expenditure that must be capitalized, petitioners did not provide a record to permit us to do so. In preparing their partnership returns, at trial, and on brief petitioners relied on a percentage allocation that is singularly unrelated to the item-by-item analysis they say the Court must make. [6] In any event, although the Court in Cowell,supra,18 B.T.A. at 1002, referred to the inadequacy of that taxpayer's records, subsequent cases require capitalization of all expenditures incurred pursuant to a plan or renovation or improvement whether or not the records are adequate. United States v. Wehrli,supra,400 F.2d at 689, 690. [7]California Casket Co. v. Commissioner,supra,19 T.C. at 37. Petitioners cite Churchill Farms, Inc. v. Commissioner,T.C. Memo. 1969-192, *215 affd. in part and revd. in part on other grounds sub nom. Bayou Verret Land Co. v. Commissioner,450 F.2d 850 (5th Cir. 1971), for the proposition that a plan of capital improvement can coexist with ordinary and necessary business expenses. In Churchill the disputed expenditures, improving a 4,200 acre multi-use tract of land, were arguably incurred pursuant to several plans of improvement, including the construction of a caretaker's building and an access road across a marsh and general maintenance. The Court stated: We recognize the validity of the rule that the cost of an item which is part of a plan of rehabilitation and modernization must be capitalized, even though, standing alone, the item may appropriately be classified as repair. But, notwithstanding the fact that certain of the expenses may be of value when and if petitioner decides to develop its property for residential or commercial uses, as we view the evidence the plans for developing the land were too nebulous in the years before us to justify treating all otherwise currently deductible expenses as capital expenditures. [Churchill Farms, Inc. v. Commissioner,28 TCM 990, 1004, 38 P-H Memo T.C. par. 69,192 at 69-1087.] *216 Petitioners' expenditures, on the other hand, renovated two apartment buildings specifically to attract wealthier tenants. There was nothing nebulous or uncertain about petitioners' plan. Petitioners also argue that the plan doctrine applies only when the taxpayer prepares a written plan or employs a recognized specialist such as an architect, engineer, or general contractor. We do not think the doctrine is so narrowly confined. In Home News Publishing Co. v. Commissioner,supra,18 B.T.A. at 1010, the Court emphasized a scheme. In *217 Stoeltzing v. Commissioner,supra,266 F.2d at 376, 377, the Court did not address any of petitioners' proposed limitations. In general, the courts look more at results than preconditions. Here, even assuming petitioners started out intending to make just a few repairs and cosmetic changes to these buildings, which we doubt, nevertheless it is clear that what developed was a full-blown renovation and improvement plan. As to the other purported limitation, the need for a general contractor, it is hard to imagine a definition of general contractor that would exclude David W. Ruttenberg, who had such extensive experience with apartment building renovations. Of course, we do not agree that the plan doctrine is so limited as to require a general contractor or other supervisor of the project. Finally, petitioners argue that expenses incurred after occupation of the apartments were not part of the plan of renovation and should be deductible as ordinary and necessary business expenses. In this argument, petitioners presumably accept the existence of a plan of general betterment. However, petitioners do not demonstrate why the renovation plan ends with occupancy of *218 any one apartment or group of apartments. Moreover, while there are records of each and every expenditure on both buildings, petitioners made no attempt to segregate those expenditures that were incurred after occupancy and that might arguably be treated as currently deductible repair expenses. Instead petitioners simply allocated the so-called "housekeeping expenses" on the basis of the percentage of increase in rents after the renovation. David was experienced in the urban real estate business in general, and in the real estate business in the Wrigleyville area in particular. Petitioners hoped to attract young professionals, capable of paying higher rents, to their renovated apartment buildings, which were advertised in the local newspaper as completely remodeled. The value of both buildings increased dramatically after the renovations. Following the renovations, the Middle Racine building was appraised at a fair market value figure of 293 percent of the amount petitioners originally paid for the building, and Eddy-Racine at 277 percent of its original purchase price. Based on the record as a whole, we conclude that there was a plan of renovation and rehabilitation for the *219 two apartment buildings and that all of the expenditures on these buildings must be capitalized. [8]
We reject petitioners' position that some of the expenditures incurred pursuant to the plan of renovation are deductible as ordinary and necessary business expenses. We conclude that all of the expenditures incurred pursuant to the plan must be capitalized. To reflect the concession and the above holding, Decision will be entered for respondent in docket No. 14529-82.
Decision will be entered under Rule 155 in docket No. 14530-82.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable year in question, and all "Rule" references are to the Tax Court Rules of Practice and Procedure.↩
2. In light of David's extensive experience in the real estate business and that of his family, particularly the purchase and renovation in 1977 of the only other building on the block containing the two apartment buildings at issue, we do not wholly accept David's testimony regarding petitioners' original expectations. In any event, we think their expectations would not be relevant or material to any issue in this case. That the necessary renovations may have been more extensive than anticipated at the time of purchase of the buildings is not determinative. Many a harried rental property owner has called in a repairman to fix something (a deductible expense) only to learn to his dismay that the item must be replaced (a nondeductible capital expenditure).↩
3. The parties stipulated to the total of $111,778, and that is the figure shown on the partnership return. However, the figures shown on the schedule attached to the return, which are tabulated in the text, add up to only $111,718. There is no explanation for this minor discrepancy, but one might surmise that a figure for sewerage had been inadvertently omitted.↩
4. See also Moss v. Commissioner,T.C. Memo. 1986-128, on appeal (9th Cir., June 30, 1986); Seahill Co. v. Commissioner,T.C. Memo. 1964-56; and Bank of Houston v. Commissioner,T.C. Memo. 1960-110↩. 5. See also La France Wine Co. v. Commissioner,T.C. Memo. 1974-254↩.
6. Even in those instances where certain work had to be redone after the roof of the Eddy-Racine building leaked, work that might possibly be classified as repairs rather than part of the plan of renovation and rehabilitation, petitioners did not favor us with information that might identify those items of work and the expenses relating thereto.↩
7. See also Moss v. Commissioner,supra;Seahill Co. v. Commissioner,supra;Bank of Houston v. Commissioner,supra; 4A J. Mertens, Law of Federal Income Taxation, sec. 25.56, at 217, 221↩, nn.22-28 (1985 rev.).
8. We do not include of course those admittedly deductible current expenses. Respondent accepted $83,092 of ordinary and necessary business expenses, including $2,808 for maintenance, at the Middle Racine building and $111,778 of ordinary and necessary business expenses, including $9,510 for maintenance, at the Eddy-Racine building.↩