OPINION. Ajrundell, Judge: The issue in this case is whether an expenditure for a concrete lining in petitioner’s basement to oilproof it against an oil nuisance created by a neighboring refinery is deductible as an ordinary and necessary expense under section 23 (a) of the Internal Eevenue Code, on the theory it was an expenditure for a repair, or, in the alternative, whether the expenditure may be treated as the measure of the loss sustained during the taxable year and not compensated for by insurance or otherwise within the meaning of section 23 (f) of the Internal Revenue Code. The respondent has contended, in part, that the expenditure is for a capital improvement and should be recovered through depreciation charges and is, therefore, not deductible as an ordinary and necessary business expense or as a loss. It is none too easy to determine on which side of the line certain expenditures fall so that they may be accorded their proper treatment for tax purposes. Treasury Regulations 111,* from which we quote in the margin, is helpful in distinguishing between an expenditure to be classed as a repair and one to be treated as a capital outlay. In Illinois Merchants Trust Co., Executor, 4 B. T. A. 103, at page 106, we discussed this subject in some detail and in our opinion said: It will be noted that the first sentence of the article [now Regulations 111, sec. 29.23 (a)-4] relates to repairs, while the second sentence deals in effect with replacements. In determining whether an expenditure is a capital one or is chargeable against operating income, it is necessary to bear in mind the purpose for which the expenditure was made. To repair is to restore to a sound state or to mend, while a replacement connotes a substitution. A repair is an expenditure for the purpose of keeping the property in. an ordinarily efficient operating condition. It does not add to the value of the property, nor does it appreciably prolong its life. It merely keeps the property in an operating condition over its probable useful life for the uses for which it was acquired. Expenditures for that purpose are distinguishable from those for replacements, alterations, improvements, or additions which prolong the life of the property, increase its value, or make it adaptable to a different use. The one is a maintenance charge, while the others are additions to capital investment which should not be applied against current earnings. It will be seen from our findings of fact that for some 25 years prior to the taxable year petitioner had used the. basement rooms of its plant as a place for the curing of habas and bacon and for the storage of meat and hides. The basement had been entirely satisfactory for this purpose over the entire period in spite of the fact that there was some seepage of water into the rooms from time to time. In the taxable year it was found that not only water, but oil, was seeping through the concrete walls of the basement of the packing plant and, while the water would soon drain out, the oil would not, and there was left on the basement floor a thick scum of oil which gave off a strong odor that permeated the air of the entire plant, and the fumes from the oil created a fire hazard. It appears that the oil which came from a nearby refinery had also gotten into the water wells which served to furnish water for petitioner’s plant, and as a result of this whole condition the Federal meat inspectors advised petitioner that it must discontinue the use of the water from the wells and oil-proof the basement, or else shut down its plant. To meet this situation, petitioner during the taxable year undertook steps to oilproof the basement by adding a concrete lining to the walls from the floor to a height of about four feet and also added concrete to the floor of the basement. It is the cost of this work which it seeks to deduct as a repair. The basement was not enlarged by this work, nor did the oilproofing serve to make it more desirable for the purpose for which it had been used through the years prior to the time that the oil nuisance had occurred. The evidence is that the expenditure did not add to the value or prolong the expected life of the property over what they were before the event occurred which made the repairs necessary. It is true that after the work was done the seepage of water, as well as oil, was stopped, but, as already stated, the presence of the water had never been found objectionable. The repairs merely served to keep the property in an operating condition over its probable useful life for the purpose for which it was used. While it is conceded on brief that the expenditure was “necessary,” respondent contends that the encroachment of the oil nuisance on petitioner’s property was not an “ordinary” expense in petitioner’s particular business. But the fact that petitioner had not theretofore been called upon to make a similar expenditure to prevent damage and disaster to its property does not remove that expense from the classification of “ordinary” for, as stated in Welch v. Helvering, 290 U. S. 111, “ordinary in this context does not mean that the payments must be habitual or normal in the sense that the same taxpayer will have to make them often. * * * the expense is an ordinary one because we know from experience that payments for such a purpose, whether the amount is large or small, are the common and accepted means of defense against attack. Cf. Kornhauser v. United States, 276 U. S. 145. The situation is unique in the life of the individual affected, but not in the life of the group, the community, of which he is a part.” Steps to protect a business building from the seepage of oil from a nearby refinery, which had been erected long subsequent to the time petitioner started to operate its plant, would seem to us to be a normal thing to do, and in certain sections of the country it ,must be a common experience to protect one’s property from the seepage of oil. Expenditures to accomplish this result are likewise normal. In American Bemberg Corporation, 10 T. C. 361, we allowed as deductions, on the ground that they were ordinary and necessary expenses, extensive expenditures made to prevent disaster, although-the repairs were of a type which had never been needed before and were unlikely to recur. In that case the taxpayer, to stop cave-ins of soil which were threatening destruction of its manufacturing plant, hired an engineering firm which drilled to the bedrock and injected grout to fill the cavities where practicable, and made incidental replacements and repairs, including tightening of the fluid carriers. In two successive years the taxpayer expended $734,316.76 and $199,-154.33, respectively, for such drilling and grouting and $153,474.20 and $79,687.29, respectively, for capital replacements. We found that the cost (other than replacement) of this program did not make good the depreciation previously allowed, and stated in our opinion: In connection with the purpose of the wort, the Proctor program was intended to avert a plant-wide disaster and avoid forced abandonment of the plant. The purpose was not to improve, better, extend, or increase the original plant, nor . to prolong its original useful life. Its continued operation was endangered; the purpose of the expenditures was to enable petitioner to continue the plant in operation not on any new or better scale, but on the same scale and, so far as possible, as efficiently as it had operated before. The purpose was not to rebuild or replace the plant in whole or in part, but to keep the same plant as it was and where it was. The petitioner here made the repairs in question in order that it might continue to operate its plant. Not only was there danger of fire from the oil and fumes, but the presence of the oil led the Federal meat inspectors to declare the basement an unsuitable place for the purpose for which it had been used for a quarter of a century. After the expenditures were made, the plant did not operate on a changed or larger scale, nor was it thereafter suitable for new or additional uses. The expenditure served only to permit petitioner to continue the use of the plant, and particularly the basement for its normal operations. In our opinion, the expenditure of $4,868.81 for lining the basement walls, and floor was essentially a repair and, as such, it is deductible as an ordinary and necessary business expense. This holding makes unnecessary a consideration of petitioner’s alternative contention that the expenditure is deductible as a business loss, nor need we heed the respondent’s argument that any loss suffered was compensated for by “insurance or otherwise.” Decision will be entered v/nder Bule SO. Sec. 29.23 (a)-4. Repairs. — The cost of incidental repairs which neither materially add to the value of the property nor appreciably prolong its life, but keep it in an ordinarily efficient operating condition, may be deducted as expense, provided the plant or property account is not increased by the amount of such expenditures. Repairs in the nature of replacements, to the extent that they arrest deterioration and appreciably prolong the life of the property, should be charged against the depreciation reserve if such account is kept. (See sections 29.23 (1)-1 to 29.23 (1)-10, inclusive.)