**UNITED STATES of America,**
**Appellant,**

v.

**W. J. WEHRLI and Helen B. Wehrli,**
**Appellees.**

**No. 9723.**

United States Court of Appeals
Tenth Circuit.

Sept. 11, 1968.

Benjamin M. Parker, Washington, D. C., (Mitchell Rogovin, Lee A. Jackson, and David O. Walter, Washington, D. C., with him on the brief), for appellant.

W. J. Wehrli, Casper, Wyo., (Houston G. Williams, Casper, Wyo., with him on the brief), for appellees.

Before MURRAH, Chief Judge, WILBUR K. MILLER,* Senior Circuit Judge, and BREITENSTEIN, Circuit Judge.

MURRAH, Chief Judge.

In this suit for refund of federal income taxes, the trial judge submitted two alternate forms of verdict under which the jury was permitted to find that expenditures made by appellee Wehrli in

---

* Of the United States Court of Appeals for the District of Columbia Circuit, sitting by designation.

the preparation of rental property for an incoming tenant were: (1) "for repairs * * * ordinary and necessary in the conduct of the taxpayers' business", deductible under Section 162[1] of the Internal Revenue Code of 1954, or (2) "capital expenditures * * * which should be depreciated as a capital investment" under Section 263.[2] The Government appeals from a judgment on the jury's verdict finding that the expenditures were ordinary and necessary business repairs. The argument seems to be that the Government was entitled to prevail on a directed verdict as a matter of applicable settled law, or, in any event, was entitled to a requested instruction embodying such settled law for determining the ultimate and submitted issue.

The established operative facts are that in 1957 Wehrli, the taxpayer, purchased an office building on two lots for $170,000[3] from an oil company, which continued to occupy the premises for approximately seven months after the sale. The two story building was in the shape of an "L", and consisted of an old wing, built prior to 1920, and a new wing, built about 1940. Wehrli began efforts to find a new tenant soon after the purchase, and finally negotiated a five-year lease with Tenneco, Inc. As a condition for entering into the lease, Tenneco required Wehrli to do substantial work to adapt the building to its needs, and submitted a proposed floor plan for the rearrangement of the interior space. It is not clear whether the rearrangement was done in accordance with the submitted floor plan, but the entire work done included the following: air-conditioning the entire building; rearranging the interior space of the old wing by

"tearing out" a hallway, the load-bearing wall, and two concrete vaults, and replacing the load-bearing wall with steel support columns; installing, as needed, new wall partitions, floor covering, electrical wiring, and plumbing fixtures; plastering and painting in both wings; moving the rest rooms "from where they were, forward in the building, somewhere to the rear of the building"; and installing new doors.

During 1959 Wehrli's expenditures for the work totaled approximately $97,000, of which $13,500 was reimbursed by Tenneco. In their joint tax return for that year Wehrli and his wife treated approximately $27,000 as capital expenditures for air-conditioning, steel, partitions, and exterior doors, and claimed the remaining $57,000 as deductible business expenses. The Commissioner asserted a tax deficiency in 1963, allowing only $1,654.84 as deductible expenses in 1959. The treatment of the remaining $55,000 is the subject matter of this suit.

The deductibility of repairs as ordinary and necessary business expenses is treated by a long-standing and unchanged regulation entitled "Repairs", which provides: "The cost of incidental repairs which neither materially add to the value of the property nor appreciably prolong its life, but keep it in an ordinarily efficient operating condition, may be deducted as an expense * * *. Repairs in the nature of replacements, to the extent that they arrest deterioration and appreciably prolong the life of the property, shall * * * be capitalized * * *." Regulation 1.162–4.

As early as 1926, the repair criteria in the regulation were illuminated and contrasted with capital

---

1. Section 162 provides in pertinent part: (a) In general.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *."

2. Section (a) provides in pertinent part: "General rule.—No deduction shall be allowed for (1) Any amount paid out for new buildings or for permanent im-

provements or betterments made to increase the value of any property or estate * * * (2) Any amount expended in restoring property or in making good the exhaustion thereof * * *."

3. For federal income tax depreciation purposes, Wehrli allocated $125,000 of the purchase price as the cost of the building and $45,000 as the cost of the two lots.

expenditures in Illinois Merchants Trust Co., 4 B.T.A. 103. There, the then Board of Tax Appeals characterized a "repair" as an expenditure to restore to a sound state or to mend—one which keeps the property in an ordinarily efficient operating condition and does not add to the value of the property nor appreciably prolong its life. "It merely keeps the property in an operating condition over its probable useful life for the uses for which it was acquired." Id. at 106. Expenditures for that purpose were distinguished from those for "replacements, alterations, improvements or additions which prolong the life of the property, increase its value, or make it adaptable to a different use. The one is a maintenance charge, while the others are additions to capital investment which should not be applied against current earnings." Id. The regulation, as thus approved, is now undoubtedly the prevailing guideline for the judicial function of determining whether, in a given case, an expenditure on property is deductible as a current repair expense or must be capitalized. See Denver & Rio Grande Western Railroad Co. v. Commissioner of Internal Revenue, 10 Cir., 279 F.2d 368; Jones v. Commissioner of Internal Revenue, 5th Cir., 242 F.2d 616; Page v. Kelm, D.C., 128 F.Supp. 14; Buckland v. United States, D.C., 66 F.Supp. 681; Oberman Manufacturing Co. v. Commissioner, 47 T.C. 471; Plainfield Union Water Co. v. Commissioner, 39 T.C. 333; Reisner v. Commissioner, 34 T.C. 1122; Bloomfield Steamship Co. v. Commissioner, 33 T.C. 75; Southern Ford Tractor Corp. v. Commissioner, 29 T.C. 833; Midland Empire Packing Co. v. Commissioner, 14 T.C. 635.

In our search for a more definite formula for the resolution of the line-drawing process, we evolved what may be called the "one-year" rule of thumb, under which an expenditure should be capitalized "if it brings about the acquisition of an asset having a period of useful life in excess of one year or if it secures a like advantage to the taxpayer which has a life of more than one year." Hotel Kingkade v. Commissioner of Internal Revenue, 10 Cir., 180 F.2d 310, 312. This concept has received rather wide acceptance,[4] and we are urged to make arbitrary application of it here. We think, however, that it was intended to serve as a mere guidepost for the resolution of the ultimate issue, not as an absolute rule requiring the automatic capitalization of every expenditure providing the taxpayer with a benefit enduring for a period in excess of one year. Certainly the expense incurred in the replacement of a broken windowpane, a damaged lock, or a door, or even a periodic repainting of the entire structure, may well be treated as a deductible repair expenditure even though the benefits endure quite beyond the current year.

In the continuing quest for formularization, the courts have superimposed upon the criteria in the repair regulation an overriding precept that an expenditure made for an item which is part of a "general plan" of rehabilitation, modernization, and improvement of the property, must be capitalized, even though, standing alone, the item may appropriately be classified as one of repair. See 4A Mertens, Law of Federal Income Taxation, § 25.41. This rule was first enunciated in 1930 in I. M. Cowell v. Commissioner, 18 B.T.A. 997, 1002,[5] and

---

4. See Fall River Gas App. Co. v. Commissioner of Internal Revenue, 1st Cir., 349 F.2d 515; American Dispenser Co., Inc. v. Commissioner of Internal Revenue, 2nd Cir., 396 F.2d 137 (June 12, 1968); Richmond Television Corp. v. United States, 4th Cir., 345 F.2d 901; United States v. Akin, 10 Cir., 248 F.2d 742; Connecticut Light and Power Co. v. United States, Ct.Cl., 368 F.2d 233;

Darlington-Hartsville Coca-Cola Bottling Co. v. United States, D.C., 273 F.Supp. 229.

5. The Board of Tax Appeals there said: "To fix a door or patch plaster might very well be treated as an expense when it is an incidental minor item arising in the use of the property in carrying on business, and yet, as here, be properly capitalized when involved in a great-

has been consistently followed. See Home News Publishing Co. v. Commissioner, 18 B.T.A. 1008; Coca-Cola Bottling Works v. Commissioner, 19 B.T.A. 1055; Ethyl M. Cox v. Commissioner, 17 T.C. 1287; California Casket Co. v. Commissioner, 19 T.C. 32; Joseph Merrick Jones v. Commissioner, 24 T.C. 563, affirmed 5 Cir., 242 F.2d 616; Bank of Houston, Par 60,110 P-H Memo TC; Seahill Co., Par 64,056 P-H Memo TC; Stoeltzing v. Commissioner of Internal Revenue, 3rd Cir., 266 F.2d 374. Whether the plan exists, and whether a particular item is part of it,[6] are usually questions of fact to be determined by the fact finder based upon a realistic appraisal of all the surrounding facts and circumstances, including, but not limited to, the purpose, nature, extent, and value of the work done, e. g., whether the work was done to suit the needs of an incoming tenant, or to adapt the property to a different use, or, in any event, whether what was done resulted in an appreciable enhancement of the property's value.

■ The Government insists that the trial judge should have sustained its motion for a directed verdict or judgment n. o. v., and ruled as a matter of law that Wehrli was engaged in a general plan of modernization and capital improvement. We have repeatedly stated that a verdict may not be directed unless the evidence is all one way, from which only one reasonable inference can be drawn. See Texaco, Inc. v. Pruitt, 10 Cir., 396 F.2d 237, and cases cited therein. This is particularly true in tax cases, whether the fact finder be the tax court or the jury. See United States v. Hess, 10 Cir., 341 F.2d 444. From our point of view, the evidence here certainly preponderates in favor of a general plan. But in view of the law's propensity to commit issues of this kind to the fact finder, we feel constrained to leave the question to the jury under instructions embodying the law we have set forth.

■ After its motion for a directed verdict had been denied, the Government requested the following jury instruction: "If you find that the $55,394.35 paid for the work done on the Wehrli Building in 1959 resulted from a general plan of reconditioning and/or improving the building to make it more suitable for plaintiffs' use as rental property, then you must find that the $55,394.35 was not deductible in 1959 as 'incidental repairs' even though some of the expenditures standing alone, might be classified as 'incidental repairs'." The trial judge marked the instruction "Refused—Not applicable," and the Government duly objected. We think the requested instruction, when prefaced by a statement of the applicable law regarding a general plan, as we have outlined, read on the particular facts of our case, and should have been given substantially as requested. This instruction should then have been followed by an additional instruction to the effect that, if the jury should find that no general plan of capital improvement existed, they should proceed to classify each individual expenditure as either a deductible repair expense or a capital expenditure, in light of the criteria set forth in the applicable regulation and as amplified in Illinois Merchants Trust Co., supra, and subsequent cases.

■ One further matter deserves consideration. Over the Government's objection, the trial judge admitted into evidence Wehrli's Exhibit 13, which showed the "Receipts and Disbursements" arising from the operation of the Wehrli building for the years 1960 through 1966, and the resulting income therefrom before depreciation. Thereafter, Wehrli used the exhibit to illustrate that capitalization of the questioned expenditures by the Government in 1963 greatly reduced his net income for the years 1963 through 1966. Suffice it to say that we agree with the Government

er plan of rehabilitation, enlargement and improvement of the entire property."

6. The Government apparently concedes that $1,654.84 of the total expenditures is deductible by Wehrli, even though a general plan is found to exist.

that the exhibit and the proof it projected were irrelevant and prejudicial.

The judgment is reversed and the cause is remanded for proceedings in accordance with the views herein expressed.