LARRY W. AND BARBARA L. PAXTON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Paxton v. Commissioner
Docket No. 34502-87
United States Tax Court
T.C. Memo 1991-217; 1991 Tax Ct. Memo LEXIS 257; 61 T.C.M. (CCH) 2630; T.C.M. (RIA) 91217; May 20, 1991, Filed *257 Decision will be entered under Rule 155. O. Christopher Meyers, for the petitioners. Anthony S. Gasaway and Michael J. O'Brien, for the respondent. WHALEN, Judge. WHALEN
MEMORANDUM OPINION Respondent determined the following deficiencies in, and addition to, petitioners' Federal income tax: Additiion to Tax
Year
Deficiency
Under Sec. 6661
1983
$ 5,305.00
$ 1,326.25 1984
2,991.00
-0-
1985
1,779.40
-0-
Unless otherwise stated, all section references are to the Internal Revenue Code, as amended. All rule references are to the Tax Court Rules of Practice and Procedure. The issues for decision are: (1) Whether petitioners' activities conducted under the name Leisure Lane Handicraft are "activities not engaged in for profit" within the meaning of section 183; (2) whether certain expenditures made by petitioners for "repair" of their rental houses are ordinary expenses deductible under section 162, or capital expenditures within the meaning of section 263; (3) whether petitioners are entitled to investment tax credit for the taxable year 1983; and (4) whether petitioners are liable for the addition to tax under section 6661 for the taxable *258 year 1983. If petitioners' gross income is redetermined by our decision to be different from the amount determined by respondent, consequential adjustments must be made to three deductions claimed by petitioners, the deduction for two-earner married couples under section 221, the deduction of medical expenses under section 213(a), and the deduction for sales taxes under section 164(a)(4). In passing, we note that the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, repealed section 221 and struck out section 164(a)(4), applicable to taxable years beginning after December 31, 1986. Secs. 131(a), 134(a)(1), 151(a), Tax Reform Act of 1986. FINDINGS OF FACT AND OPINION The parties have stipulated some of the facts, which are so found. The Stipulation of Facts filed by the parties and the attached exhibits are incorporated herein. During the years at issue, petitioners were employed as full-time school teachers by the City of Blair, Oklahoma. They filed a Federal income tax return for each subject calendar year using the cash receipts and disbursements method of accounting. At the time they filed the petition in this case, they resided in Blair, Oklahoma. For convenience, *259 we combine our findings of fact and opinion with respect to each of the above four issues and set them forth below under separate headings. Issue 1: Handicraft Activity
Petitioners began Leisure Lane Handicraft (Leisure Lane) as an activity in 1980. It consisted of petitioners' making various items by hand and selling them at craft shows under the name Leisure Lane. Mrs. Paxton made needle work and crocheted items, including hall mats, pot lifters, and dolls. Mr. Paxton made wooden toys of various shapes and sizes. Mrs. Paxton sold the items she made for prices ranging from $ 1 to $ 4. She charged the same prices throughout the years 1980 to 1985. Mr. Paxton sold the small toys he made for $ 1 from 1980 through 1984, and for $ 1.50 from 1984 through 1985. He sold the larger toys for $ 8 throughout the period 1980 to 1985. Petitioners sold nearly all of the craft products they made for the asking price, although, occasionally, they had some left over. During the years in issue, 1983, 1984, and 1985, petitioners attended eleven, seven, and nine crafts shows, respectively. They attended the craft shows themselves; they did not employ others to attend the shows for them. *260 They did not attend craft shows on Sundays. On their tax returns for the years 1980 through 1985, petitioners reported the following gross sales, total deductions, and losses from Leisure Lane: 1980 1981 1982 1983 1984 1985 Gross sales
$ 1,008 $ 4,903 $ 6,953 $ 2,108 $ 1,001 $ 2,424 Advertising
185 -- 232 198 129 57 Car and truck
798 1,106 1,023 874 544 465 expenses
Commissions (fees)
-- -- 759 893 275 445 Depreciation
247 950 1,850 2,003 1,736 1,784 Dues and
-- -- -- -- 110 63 publications
Insurance
-- -- 267 -- 484 487 Interest
-- 182 -- 445 -- -- Office expenses
-- -- 95 219 83 67 Repairs
-- -- -- 1,539 134 -- Supplies
-- 6,532 5,052 4,388 2,413 1,886 Taxes
-- 8 9 10 47 46 Travel expenses
-- 624 680 640 -- 211 Utilities and
-- 76 230 160 93 191 telephone
Other expenses
361 602 169 66 552 -- Total expenses
1,591 10,080 10,366 11,435 6,600 5,769 Income (Loss)
(583)
(5,177)
(3,413)
(9,327)
(5,599)
(3,345)
We note that the total deductions claimed for *261 1985, $ 5,769, are $ 67 more than the arithmetic total of the specific deductions claimed on the return. In his notice of deficiency, respondent determined that Leisure Lane was not an activity engaged in for profit within the meaning of section 183. Accordingly, he determined that the only deductions allowable for each of the subject years are the following: 1983 1984 1985 Interest
$   445
$   -0-
$   -0-
Taxes
10
47
46
Operating expenses
1,653
954
2,378
(other than depreciation)
Total
$ 2,108
$ 1,001
$ 2,424
The above totals equal the gross income from Leisure Lane as reported by petitioners in each year. In effect, respondent determined that petitioners are entitled to deduct the interest which they paid during 1983, pursuant to section 163, and are entitled to deduct the taxes which they paid during each of the years at issue, pursuant to section 164. He further determined that petitioners are entitled to deduct other expenses attributable to Leisure Lane, except depreciation, but only to the extent that the gross income derived from the activity during the taxable year exceeds interest and taxes. Cf. sec. 183(b). Petitioners do not question *262 respondent's computation of the amount of the adjustment under section 183. Their position is that section 183 is not applicable to Leisure Lane. They claim that they entered into the activity with the objective of making a profit, and that the losses reported during each of the years at issue are deductible without limitation. Section 183(a) applies in the case of an activity undertaken by an individual or an S corporation, if the activity is not engaged in for profit. For this purpose, the phrase "activity not engaged in for profit" is defined by subsection 183(c) to mean "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212." Sec. 183(c). Section 162(a) allows as a deduction all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. Section 162 requires the taxpayer to have engaged in the activity with an actual and honest objective of making a profit. E.g., Dreicer v. Commissioner, 78 T.C. 642, 643-645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). Similarly, *263 paragraphs (1) and (2) of section 212 allow a deduction for all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income. Paragraphs (1) and (2) of section 212 also require the taxpayer to have engaged in the activity with the objective of making a profit, rather than as a hobby or recreation. Sec. 1.212-1(c), Income Tax Regs.; Brannen v. Commissioner, 78 T.C. 471, 507 (1982), affd. 722 F.2d 695 (11th Cir. 1984); Steele v. Commissioner, T.C. Memo 1981-118; Cherry v. Commissioner, T.C. Memo 1967-123; see also Jasionowski v. Commissioner, 66 T.C. 312, 319 (1976). Therefore, if the taxpayer pursues an activity with an actual and honest profit objective, then the activity falls within the scope of section 162 or paragraph (1) or (2) of section 212. If the taxpayer does not have such a profit objective, then the activity falls outside the scope of sections 162 and 212, and is subject to section 183. See, e.g., Dunn v. Commissioner, 70 T.C. 715, 719-720 (1978), *264 affd. 615 F.2d 578 (2d Cir. 1980). This is a factual question, to be decided on the basis of all facts and circumstances in the case. Sec. 1.183-2(a), Income Tax Regs. Petitioners bear the burden of proof. Rule 142(a). In deciding whether Leisure Lane was engaged in for profit, greater weight is given to objective facts than to petitioners' mere statement of their intent. See sec. 1.183-2(a), Income Tax Regs.
Section 1.183-2(b), Income Tax Regs., sets forth a list of "relevant factors" to be considered. No single factor, nor the existence of a majority of the factors on the list, is controlling, but the Court looks at the totality of the circumstances. See Allen v. Commissioner, 72 T.C. 28, 34 (1979). One factor which bears on the taxpayer's true objective and may suggest that the activity is not engaged in for profit is a record of substantial losses over many years and the unlikelihood of achieving a profit. Bessenyey v. Commissioner, 45 T.C. 261, 274 (1965), affd. 379 F.2d 252 (2d Cir. 1967); see sec. 1.183-2(b)(6), Income Tax Regs. Another factor which may suggest that the activity is not engaged *265 in for profit is the fact that the taxpayer has substantial income from other sources, particularly if the losses from the activity generate substantial tax benefits. Sec. 1.183-2(b)(8), Income Tax Regs. This is especially true if the activity involves elements of personal pleasure or recreation. See sec. 1.183-2(b)(8) and (9), Income Tax Regs.
In the present case, petitioners reported no income from Leisure Lane on their Federal income tax returns for years 1980 through 1985. They reported a net loss in each of those years. At the same time, both petitioners were employed as full-time school teachers. Their teacher salaries and interest formed the primary source of their combined income which was substantial. The "loss" which they reported from Leisure Lane in each year was the largest deduction against that income. During the years 1980 through 1985, petitioners reported the following salaries and interest income, and "loss" from Leisure Lane: Year
Salaries
Interest
Loss 1980
$  28,407
$ 1,170 $    583
1981
33,580
1,295 5,177
1982
39,443
1,506 3,413
1983
43,799
1,275 9,327
1984
44,607
1,322 5,599
1985
45,661
2,156 3,345
$ 235,497
$ 8,724 $ 27,444
*266 Despite the above reported losses, we find no evidence that petitioners took any steps from 1980 through 1985 to limit the losses or to make Leisure Lane profitable. For example, the prices of petitioners' craft products remained unchanged during the years 1980 through 1985, except for the $ .50 price increase of Mr. Paxton's small wooden toys in 1984. Neither of the petitioners testified to any plan to make Leisure Lane profitable and to recoup the losses of $ 27,444 incurred in prior years. From his testimony, it appears that Mr. Paxton had not considered the problem. Mrs. Paxton's testimony was vague and unconvincing. She said that "one of the main ways that a profit will begin to show" in the future is the fact that there will be less expense in purchasing supplies, "such as crochet hooks, pens, and this type of thing." Like Mr. Paxton, Mrs. Paxton spoke of no plan to recoup the losses incurred in prior years. The lack of any concrete plan for making Leisure Lane profitable is particularly significant in this case because the cost of supplies by itself is more than twice the gross sales realized in 1983 and 1984, and is approximately 78 percent of gross sales in 1985. *267 In fact, during the years 1980 through 1985, petitioners reported aggregate gross sales of $ 18,397 and aggregate cost of supplies of $ 20,271. This fact is hard to reconcile with petitioners' testimony that they charged a "fifty percent mark-up." It is hard to reconcile, assuming petitioners' cash receipts were fully reported. At the same time, it is apparent that petitioners drew personal pleasure and recreation from working on the craft products and going to craft shows. Mr. Paxton testified that he had "always" enjoyed woodworking and working with his hands. Similarly, Mrs. Paxton had been involved in crocheting for many years before petitioners started Leisure Lane. Petitioners also enjoyed showing items at craft shows and enjoyed the company of friends, including Mr. Randy Moseley, Mr. Paxton's brother-in-law, who also participated in craft shows. We note that petitioners claim to have spent substantial time making craft items and preparing for craft shows. See sec. 1.183-2(b)(3), Income Tax Regs. Mr. Paxton testified at trial that he worked between 12 to 18 hours a week, and approximately 36 to 40 weeks a year, making wooden toys. According to Mrs. Paxton, the time *268 she spent on Leisure Lane varied throughout the year. During short busy seasons, she "might spend" as much as 30 to 40 hours a week on the craft products, but during less demanding seasons, such as January through May, she did not spend as much time. In evaluating petitioners' testimony, we note, however, that both petitioners were employed as full-time teachers, they owned and operated several rental properties, in addition to Leisure Lane, and, apparently, they did not work on Sundays. Mr. Paxton testified that he could make approximately 30 small toys in 2 hours. At that rate, if he worked 12 to 18 hours a week, as he testified, he would produce 180 to 270 small toys a week. He testified that he made "100 or more" small items a week. Even taking the smaller figure, if he worked 36 to 40 weeks a year, he would produce 3,600 to 4,000 small toys per year. He sold each small wooden toy for $ 1 until 1983, and for $ 1.50 thereafter. Mr. Paxton also testified that he sold most of the toys he produced and only occasionally had some left over. Based upon the above, petitioners would have realized gross sales of $ 3,600 in 1983 from Mr. Paxton's activities alone and at least $ 5,400 *269 in 1984 and 1985. However, the gross sales reported on their tax returns for 1983, 1984 and 1985, including sales of products made by both petitioners, total $ 2,108, $ 1,001, and $ 2,424, respectively. Assuming that all of petitioners' sales were reported on their tax returns, the above analysis suggests that petitioners did not spend as much time on the craft activity as they claim. Other facts belie petitioners' claim that they had profit objective. First, petitioners did not conduct Leisure Lane in a businesslike manner. See sec. 1.183-2(b)(1), Income Tax Regs. They had no separate bank account for Leisure Lane but deposited all monies received from Leisure Lane sales in their personal bank account. They were aware that State sales taxes must be collected by a retailer but they did not collect and remit sales taxes, unless it was required by the particular craft show they attended. Furthermore, in determining the price of each of the items they sold, petitioners took into account only the cost of the direct materials used in producing the item. They gave almost no consideration to fixed and variable costs such as advertising, car and truck expenses, commissions (fees), *270 and travel expenses associated with the sale and production of goods for Leisure Lane, even though they claimed deductions for such costs on their tax returns. Petitioners received no compensation for their time and they did not consider their hourly rate of compensation for the craft activities in pricing the articles sold. Mrs. Paxton testified "you do not get paid for your time on it, in the long run." Second, although petitioners maintained some books and records for Leisure Lane, they were not complete or accurate. See sec. 1.183-2(b)(1), Income Tax Regs. For example, at trial petitioners claim to have included in Leisure Lane's records some of the costs for their rental activity, described below, an activity unrelated to Leisure Lane. Mrs. Paxton testified that approximately 50 percent of the "supplies" reported in 1983 as a deduction for Leisure Lane in the amount of $ 4,388 was, in fact, for materials used by petitioners in connection with their real estate rental activity. She also admitted that part of the amount deducted as expenses for the rental properties could properly have been charged to Leisure Lane. Petitioners did not maintain beginning and ending inventories *271 for Leisure Lane, as required by section 1.471-1, Income Tax Regs., nor is there any record to show the beginning and ending inventory for each of the taxable years in issue. Finally, petitioners failed to prove that any assets used for Leisure Lane activity would appreciate in value, so that petitioners might eventually profit from such appreciation. See sec. 1.183-2(b)(4), Income Tax Regs. The major assets which petitioners held in connection with the Leisure Lane activity included a shop building, equipment and supplies, and finished products. They presented no evidence to prove that any of those assets, including the shop building, could reasonably be expected to appreciate in value. Based on the record in this case, we conclude that petitioners have failed to satisfy their burden of proving that they conducted Leisure Lane with an "actual and honest objective of making a profit." Dreicer v. Commissioner, supra at 645. Therefore, we sustain respondent's determination and hold that Leisure Lane was "an activity not engaged in for profit" and is subject to the limitation in section 183. Issue 2: Expenditures on Rental Real Properties
Petitioners *272 owned five residential properties in the City of Blair, Oklahoma, which they held for rental. Set out below is the address of each property, the year petitioners bought it, and the amount they paid to purchase it: Year
Address Purchased
Purchase Price
401 and 409
East 5th Street
Unknown
$ 10,521  732 Stone Hocker
1982 13,000
315 Taylor
1979 14,854
214 Warren Road
1983 14,714
1016 Zinn
1981 8,624
During the years at issue, petitioners made various expenditures for work on four of the above properties which they deducted as "repairs" or "wages" on Schedule E, Supplemental Income Schedule, of their Federal income tax returns. In his notice of deficiency, respondent reclassified the subject expenditures as capital improvements of the four rental properties. Set forth below is a schedule summarizing the deductions claimed by petitioners, the amounts disallowed by respondent, the dates the work was done, and the nature of the disallowed items. Claimed on
Disallowed
Property
Year
Tax Return
in the Notice
401 & 409 East 5th St.
1983
$ 3,357
$ 2,518.16
1985
3,658
2,696.02
732 Stone Hocker
1983
3,123
2,645.45
1984
4,694
4,171.22
315 Taylor
1983
1,821
1,754.79
1016 Zinn
1983
1,123
842.56
*273 Date of Property
Expenditure Disallowed Items
401 & 409 East 5th St.
4/7-5/30, 8/28
New carpet, a porch
and roof, and wages
Unknown
New roof, new
breaker box, and
wages
732 Stone Hocker
10/10-11/31 Windows and a porch
1/16, 5/30-9/21 Kitchen cabinets
10/4, 11/2-11/28
and sinks,
sheetrock in
bathroom, new
vinyl, and wages
315 Taylor
10/7-11/3 Windows, carpet,
linoleum, faucet,
fittings, sheetrock
and lumber
1016 Zinn
7/1-7/16
New door and
concrete floor for
garage
The Stipulation of Facts filed by the parties states that certain expenditures were not substantiated by petitioners and are "disallowed for lack of substantiation." Petitioners did not mention this matter at trial or in their post-trial brief. Accordingly, we conclude that they concede that such amounts are not deductible, and we need not consider this matter. See Ireland v. Commissioner, 89 T.C. 978, 979 n. 3 (1987); Sherwood Properties, Inc. v. Commissioner, 89 T.C. 651, 652 n.2 (1987). Of the expenditures that were substantiated, the stipulation computes the "amount disallowed" in each year for the four rental *274 properties. The amounts thus computed differ slightly from the adjustments in the notice of deficiency less the additional unsubstantiated amounts, mentioned above. Set forth below is a schedule summarizing the deductions claimed for each property, the amounts disallowed in the notice of deficiency, the additional amounts which petitioners concede to be unsubstantiated, the small differences mentioned above, and the amounts disallowed according to the stipulation. Summary of Amounts Disallowed
Claimed on
Disallowed
Property
Year
Tax Return
in the Notice
401 & 409 East 5th St.
1983
$ 3,357
$ 2,518.16
1985
3,658
2,696.02
732 Stone Hocker
1983
3,123
2,645.45
1984
4,694
4,171.22
315 Taylor
1983
1,821
1,754.79
1016 Zinn
1983
1,123
842.56
Disallowed-
Property
Unsubstantiated
Difference
Stipulation
401 & 409 East 5th St.
$ 67.75
$ (4.43)
$ 2,445.98
774.00
(.36)
1,921.66
732 Stone Hocker
-0- (10.31)
2,635.14
21.73
-0- 4,149.49
315 Taylor
-0- .31 1,755.10
1016 Zinn
-0- .81 843.37
Section 263(a)(1) provides that "any amount paid out for * * * permanent improvements or betterments made to increase the value *275 of any property" is not deductible. This includes an amount paid or incurred which adds to the value, or substantially prolongs the useful life, of property owned by the taxpayer. Sec. 1.263(a)-1(b), Income Tax Regs. Likewise, repairs in the nature of replacements must be either capitalized and depreciated or charged against the depreciation reserve, to the extent they arrest deterioration and appreciably prolong the useful life of the taxpayer's property. Sec. 1.162-4, Income Tax Regs.
On the other hand, amounts paid or incurred for incidental repairs and maintenance of property are not capital expenditures subject to this limitation. Sec. 1.263(a)-1(b), Income Tax Regs. Incidental repairs and maintenance expenses do not materially add to the value of the property nor appreciably prolong its life, but merely keep it in an ordinarily efficient operating condition. Sec. 1.162-4, Income Tax Regs.
Petitioners contend that the subject expenditures were in the nature of incidental repairs and maintenance expenses, and that none of them increased the market value of any of the properties involved or prolonged its useful life. The only evidence which petitioners introduced at trial *276 to prove that contention was their own testimony. Mr. Paxton testified that the expenditures made on three of the four properties did not increase the value of the property or prolong its useful life. We find his testimony vague and unpersuasive. We are not required to accept the uncorroborated and unpersuasive testimony of an interested party and we do not accept Mr. Paxton's testimony in this case. Smith v. Commissioner, 800 F.2d 930, 935 (9th Cir. 1986), affg. T.C. Memo 1984-661; Fleischer v. Commissioner, 403 F.2d 403, 406 (2d Cir. 1968), affg. T.C. Memo 1967-85; Davis v Commissioner, 88 T.C. 122, 143-144 (1987), affd. 866 F.2d 852 (6th Cir. 1989). Petitioners failed to present any other evidence to establish their contention, such as evidence of the market value or the useful life of the properties after the expenditures were made. Furthermore, even Mr. Paxton admitted that the new roof placed on the East 5th Street properties in 1985 increased the useful lives of those properties. He also admitted that all of the expenditures made it easier for petitioners to *277 lease the subject four rental properties, and enabled them to charge and receive higher rental prices. Thus, the expenditures increased the value of the subject properties as rental properties. Mr. Paxton also admitted that the items replaced during the years 1983 through 1985 were still in use many years thereafter. Moreover, according to Mr. Paxton's testimony, the replacements were necessary because the old items were worn out, leaking and unserviceable, or they "did not work." Thus, the subject replacements were made "for the purpose of arresting deterioration" and must be capitalized. Sec. 1.162-4, Income Tax Regs.
The relative magnitude of the expenditures made by petitioners in this case further suggests that the expenditures were not merely for "incidental repairs and maintenance of property." Sec. 1.263(a)-1(b), Income Tax Regs. With regard to each of the rental properties, the expenses disallowed are a significant percentage of the original purchase price, as shown on the following schedule: Expenses Property
Purchase Price
Year
In Dispute
Percentage
401 & 409 East 5th St.
$ 10,521  1983
$ 2,446.09
23.25%
1985
1,921.66
18.26%
732 Stone Hocker
13,000
1983
2,635.14
20.27%
1984
4,149.49
31.92%
315 Taylor
14,854
1983
1,755.10
11.82%
1016 Zinn
8,624
1983
843.37 9.78%
*278 We note that an expenditure made for an item which is part of a "general plan" of rehabilitation, modernization, and improvement of the property must be capitalized, even though, standing alone, the item may be properly classified as a deductible repair expense. United States v. Wehrli, 400 F.2d 686, 689 (10th Cir. 1968); Ruttenberg v. Commissioner, T.C. Memo 1986-414. In sum, petitioners failed to disprove respondent's determination that the expenditures in this case were part of a rehabilitation of each of the subject buildings. Petitioners argue that the expenditures were for ordinary repairs rather than permanent improvements. In support of that argument, they note that they made many of the expenditures several years after they purchased the properties and that they have not sold any of the properties. However, the time period between purchase and expenditure does not have any necessary bearing on whether the expenditure is an ordinary repair expense. Similarly, the fact that petitioners have not sold the properties does not prove that the expenditures were ordinary repairs. In this case, petitioners derived income from renting out *279 the real properties, rather than from selling them at a gain. Considering all of the facts and circumstances in this case, we find that petitioners failed to satisfy their burden of proving that the subject expenditures were for "incidental repairs and maintenance" of the properties rather than permanent improvements or betterments. Therefore, we sustain respondent's determination and hold that such expenditures must be capitalized, and are not currently deductible in the years they were incurred. Accordingly, the deductions claimed by petitioners for "repairs" and "wages" on their Schedules E for 1983, 1984 and 1985 will be disallowed in the amounts set forth in the Stipulation of Facts filed by the parties, as summarized in the schedule entitled Summary of Amounts Disallowed, set forth above. We note that petitioners argued in their trial memorandum that, "the expenditures made pursuant to a reconditioning project such as those undertaken here involve a removal and abandonment of a part of the property." Based on that theory, they claimed to be entitled to a loss deduction under section 165, in an amount equal to "the difference between the basis allocated to the portion of *280 the property repaired and salvage if any." The potential application of section 165 was also briefly discussed at the outset of trial. However, petitioners failed to raise this issue in their post-trial brief. Consequently, we conclude that they conceded or abandoned it, and we need not consider it. See Rule 151(e)(5); see, e.g., Petzoldt v. Commissioner, 92 T.C. 661, 683 (1989); Ideal Basic Industries, Inc. v. Commissioner, 82 T.C. 352, 396 (1984). Moreover, there is nothing in the record to establish "the difference between the basis allocated to the portion of the property repaired and salvage if any." Issue 3: Investment Tax Credit
On their Federal income tax return for 1983, petitioners claimed an investment tax credit in the amount of $ 66, attributable to unspecified used property acquired at a cost of $ 825. Petitioners' return also includes a depreciation schedule which lists the following four pieces of equipment acquired during the year: saw
$ 175.00
sprayer
130.00
vac
101.00
compress
419.00
$ 825.00
In his notice of deficiency, respondent determined that the $ 66 investment tax credit claimed by petitioners *281 was not allowable. The notice states as follows: Investment Credit The $ 66.00 shown as investment credit on Leisure Lane Handicraft is disallowed because the property does not qualify for the investment credit under Section 38 of the Internal Revenue Code. Therefore, your tax for the taxable year ended December 31, 1983 is increased $ 66.00.
During 1983, section 38 allowed a credit against income tax equal to a percentage of the taxpayer's investment in section 38 property placed in service during the year. Secs. 38, 46. Property could not qualify as section 38 property unless it was used in a trade or business or held for the production of income. Secs. 48(a)(1), 167(a), 168(c)(1); see Pike v. Commissioner, 78 T.C. 822, 841-842 (1982), affd. without opinion 732 F.2d 164 (9th Cir. 1984). In passing, we note that sections 474(m)(1) and 475(a) of the Deficit Reduction Act of 1984, Pub. L. 98-369, 98 Stat. 494, 833, 847, repealed the investment tax credit allowed by section 38 and replaced it with the general business credit, applicable to taxable years beginning after December 31, 1983. Petitioners bear the burden of disproving *282 respondent's determination set forth above. Rule 142(a). Petitioners did not address this issue either at trial or in their post-trial brief. Accordingly, we conclude that they concede that respondent's determination is correct, and we do not reach this issue. See Ireland v. Commissioner, supra; Sherwood Properties, Inc. v. Commissioner, supra.Moreover, there is nothing in the record to establish that petitioners are entitled to the $ 66 investment tax credit. Issue 4: Addition to Tax Under Section 6661
Respondent determined that there was a substantial understatement of income tax within the meaning of sec. 6661(a), with respect to petitioners' return for 1983. Accordingly, he determined an addition to tax for 1983 in the amount of $ 1,326.25, equal to 25 percent of underpayment attributable to such understatement. Section 6661(a) provides an addition to tax, if there was a "substantial understatement of income tax for any taxable year." The amount of the addition was equal to 25 percent of the amount of any underpayment attributable to the substantial understatement. This percentage rate was applicable to additions *283 assessed after October 21, 1986, and thus applies in the present case. See Pallottini v. Commissioner, 90 T.C. 498 (1988). In passing, we note that the Omnibus Budget Reconciliation Act of 1989, Pub. L. 101-239, 103 Stat. 2106, repealed section 6661 and amended section 6662 to provide for an addition to tax equal to 20 percent of the underpayment attributable to any substantial understatement of income tax, in the case of returns due after December 31, 1989. Petitioners bear the burden of proving that respondent's determination is incorrect. Rule 142(a). They presented no evidence about this issue at trial and failed to address it in their post-trial brief. Thus, we need not and do not consider it. See Ireland v. Commissioner, supra; Sherwood Properties, Inc. v. Commissioner, supra.Therefore, we sustain respondent's determination with respect to it. To reflect the foregoing, Decision will be entered under Rule 155.