T.C. Memo. 1997-457


UNITED STATES TAX COURT


BADGER PIPE LINE COMPANY, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 23441-95.                    Filed October 8, 1997.


<u>Travis M. Dodd</u>, <u>Richard B. Noulles</u>, and <u>Jeffrey C. Rambach</u>,
for petitioner.

<u>Gary L. Bloom</u>, for respondent.


MEMORANDUM OPINION


TANNENWALD, <u>Judge</u>:  Respondent determined a deficiency of
$93,440 in petitioner's Federal income tax for the taxable year
ended December 31, 1991.

After concessions, the issue for decision is whether petitioner may deduct or must capitalize the expenses of relocating a portion of its pipeline.[1]

Background

This case was submitted fully stipulated under Rule 122.[2] The stipulation of facts, supplemental stipulation of facts, and attached exhibits are incorporated herein by this reference.

Petitioner is a corporation, whose principal office was located in Tulsa, Oklahoma, at the time the petition was filed. It timely filed its 1991 tax return with the Internal Revenue Service Center, Austin, Texas.

Petitioner operates a common carrier refined products pipeline system transporting refined petroleum products in the States of Illinois, Indiana, and Wisconsin. The system consists of approximately 335 miles of pipeline. Approximately 25 miles of the pipeline consists of 16-inch pipe; the remainder consists of 12-inch or smaller pipe.

Petitioner's pipeline system is located on both private and public property. Because it is not always possible or

---

[1] If we decide petitioner must capitalize all or some of these expenses, then petitioner will be entitled to a corresponding depreciation allowance.

[2] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

practicable for petitioner to purchase the property that its pipeline must traverse, petitioner often will purchase an easement, or right-of-way, granting it the right to locate its pipeline on particular parcels of private or public property. In some instances, however, petitioner is unable to purchase a right-of-way because that right previously has been conveyed to another easement holder, such as when the State holds the right-of-way in property that borders a highway. Under such circumstances, petitioner may acquire a permit which allows it to locate its pipeline within the existing right-of-way. As a matter of contract, however, such a permit often provides that if petitioner's pipeline ever interferes with the right-of-way holder's future use of the right-of-way, petitioner is responsible for the cost of relocating the pipeline in order to cure any such interference. This method of securing a location for the placement of pipeline represents a common, ordinary, and necessary practice throughout the pipeline industry.

At some point prior to 1991, petitioner entered into a contractual agreement with the Illinois Department of Public Works and Buildings, Division of Highways, predecessor to Illinois Department of Transportation (both hereinafter referred to as IDOT), whereby petitioner secured a permit to locate its pipeline within an IDOT right-of-way that bordered certain Illinois highways. Pursuant to that permit, petitioner was and

is contractually responsible for the cost of relocating its pipeline if it were found later to interfere with IDOT's prospective use of that right-of-way.

Beginning prior to 1990, IDOT disclosed to petitioner and other pipeline companies plans for improvements it intended to make along Illinois Route 83, including pavement reconstruction and the construction of certain retaining walls and noise abatement walls. The proposed IDOT improvements along Route 83 at the relevant location conflicted with petitioner's and at least three other pipeline companies' existing pipelines within IDOT's right-of-way. By September 1990, it was determined that petitioner and the other pipeline companies would be required to relocate less than 1,000 feet of their respective pipelines in order to comply with the existing IDOT permits and to avoid interference with IDOT's proposed improvements at the relevant location. (Hereinafter we refer to the pipeline relocation project as the Route 83 relocation.)

Accordingly, petitioner and two other pipeline companies jointly submitted a proposal to the Village of Hinsdale, Illinois, and in March 1991 were granted a permit to relocate their pipelines beneath Jackson Street, adjacent to Route 83. Petitioner and the two other pipeline companies agreed to share the cost of removing a portion of Jackson Street and then restoring it after the pipelines were relocated. Each pipeline

company paid the expense of relocating its own pipelines. Of petitioner's $288,597 in expenditures on the Route 83 relocation, $23,111 represents the cost of the new pipe and pipe bends installed, and $3,196 represents the cost of the pipe coating. The remainder of $262,290 represents expenditures for labor, miscellaneous supplies, and the removal and restoration of Jackson Street.

When performing a relocation of the foregoing type, it is not feasible to stop the flow of product through the pipeline for the duration of time necessary to complete the relocation. Consequently, petitioner had to dig new trenches, install replacement pipe, test the pipe, and then divert the product flow to the relocated portion of the pipeline. The existing pipe was then removed. Completing the relocation in this manner interrupts product flow for only a few hours and the supply of product to users only marginally. Accordingly, petitioner was able to continue its business operations in the normal course, with only a minor interruption. The foregoing procedure is a common and ordinary occurrence in petitioner's business.

The less than 1,000 feet of pipeline at issue in this case is part of the approximately 25-mile section of 16-inch Badger pipeline originally installed and placed in service in 1968 (the 1968 pipe). The entire 1968 pipe runs between pumping stations located at Canal Junction and Des Plaines, Illinois, and

transports various refined fuel products, including gasoline, distillates, turbine fuels, and fuel oil.

Prior to installation, the 1968 pipe was coated externally with a coating having an approximate thickness of five thirty-seconds inch. The 1968 pipe also was protected cathodically, which is a process by which an electric current is applied to buried steel pipe to protect bare metal from corrosion in the event the pipe's coating is flawed, damaged, or otherwise becomes disbonded.

In 1991, in order to perform the Route 83 relocation, petitioner acquired new 16-inch steel pipe (the 1991 pipe). Prior to installation, the 1991 pipe was coated externally with a coating having a minimum thickness of 12 mils (twelve one-thousands inch). After installation, the 1991 pipe was protected cathodically using existing cathodic protection at the site.

After product flow was diverted into and through the 1991 pipe section, the less than 1,000-feet of the 1968 pipe at the relocation site was removed (the removed pipe) and visually inspected for signs of corrosion and physical damage, as required by Federal Department of Transportation Regulations. Based on the results of the inspection, petitioner determined that the removed pipe, with the exception of a small portion damaged during the removal process, could be saved for re-use elsewhere in the 16-inch pipeline section should the need arise. The

removed pipe was taken to one of petitioner's storage facilities. The pipe has not been reused and remains in inventory. Petitioner did not retire the removed pipe, nor did it remove the undepreciated cost of that pipe from its books and records. The original 1968 pipe on either side of the newly installed 1991 pipe was unaffected by the Route 83 relocation.

Prior to, during, and following the Route 83 relocation, petitioner's pipeline complied with all existing regulatory requirements at the Route 83 location site. The Route 83 relocation was performed by petitioner solely to comply with its contractual obligations under its permit from IDOT and in order to continue the use of its pipeline in the ordinary and normal course of its business; it was not performed in response to any regulatory order, regulation, or other regulatory requirement of IDOT or any other regulatory agency. Relocation expenses such as those incurred by petitioner are ordinary and necessary incidents of petitioner's business, are commonly and ordinarily incurred in the pipeline business, and are necessary to enable a pipeline to operate in the normal course of business.

The Route 83 relocation was not performed as part of a general plan of rehabilitation or refurbishment. It was not intended to, and did not, adapt the pipeline to a new or different use. It did not result in any change in use of petitioner's pipeline system. Prior to, during, and following

the Route 83 relocation, the direction, capacity, pressure, and product flow of petitioner's pipeline remained unchanged, including the direction, capacity, pressure, and product flow at the Route 83 location.  The Route 83 relocation was intended to and did keep petitioner's pipeline in the same ordinary and normal working condition as it was in before the relocation.

Discussion

Section 162(a) allows the deduction of "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business".  Section 1.162-4, Income Tax Regs., provides:

> The cost of incidental repairs which neither materially add to the value of the property nor appreciably prolong its life, but keep it in an ordinarily efficient operating condition, may be deducted as an expense * * *.  Repairs in the nature of replacements, to the extent that they arrest deterioration and appreciably prolong the life of the property, shall * * * be capitalized * * *

On the other hand, section 263(a)(1) provides that "No deduction shall be allowed for * * * Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate."  Such an amount "is a capital expenditure that is taken into account through inclusion in inventory costs or a charge to capital accounts or basis".  Sec. 1.263(a)-1(b), Income Tax Regs.

Within the scope of section 263(a)(1) are those amounts paid or incurred (1) to add to the value, or substantially prolong the useful life, of property owned by the taxpayer, or (2) to adapt property to a new or different use. Id. Examples of capital expenditures include "The cost of acquisition, construction, or erection of buildings, machinery and equipment, furniture and fixtures, and similar property having a useful life substantially beyond the taxable year." Sec. 1.263(a)-2(a), Income Tax Regs. However, section 1.263(a)-1(b), Income Tax Regs., specifically recognizes that "Amounts paid or incurred for incidental repairs and maintenance of property are not capital expenditures * * *. See section 162 and § 1.162-4."

Expenses incurred as part of a plan of rehabilitation or improvement must be capitalized even though the same expenses if incurred separately would be deductible as ordinary and necessary. United States v. Wehrli, 400 F.2d 686, 689 (10th Cir. 1968); Norwest Corp. v. Commissioner, 108 T.C. 265, 280 (1997).

Similarly, moving expenses can be a current business expense or a capital expenditure depending on the context. True v. United States, 894 F.2d 1197, 1209 (10th Cir. 1990). Moving costs associated with the acquisition of capital assets are considered part of the cost of acquisition, a capital expenditure. See Maier Brewing Co. v. Commissioner, T.C. Memo. 1987-385, affd. without published opinion 916 F.2d 716 (9th Cir.

1990) (cost of moving brewery tanks from seller's plant); <u>Sears Oil Co. v. Commissioner</u>, T.C. Memo. 1965-39 (cost of transporting barges from place of manufacture to taxpayer's place of business). In contrast, the cost of moving property already in use by the taxpayer may be a deductible business expense, although the general plan of rehabilitation analysis applies to moving as well as repair costs. <u>True v. United States</u>, <u>supra</u> at 1209 (and cases cited therein).

An important factor in determining whether the appropriate tax treatment is immediate deduction or capitalization is the taxpayer's realization of benefits beyond the year in which the expenditure is incurred. <u>INDOPCO, Inc. v. Commissioner</u>, 503 U.S. 79, 87 (1992); <u>United States v. Wehrli</u>, <u>supra</u> at 689. This, however, is not an absolute rule, since the benefits of expenditures considered to be currently deductible, such as repairs, for example, often extend beyond the current year. <u>United States v. Wehrli</u>, <u>supra</u>. As stated previously by this Court, "The proper test is whether the expenditure materially enhances the value, use, life expectancy, strength, or capacity as compared with the status of the asset prior to the condition necessitating the expenditure." <u>Plainfield-Union Water Co. v. Commissioner</u>, 39 T.C. 333, 338 (1962).

It is clear from the foregoing analysis that whether an expenditure may be deducted or must be capitalized is a question

of fact.  INDOPCO, Inc. v. Commissioner, supra at 86; Norwest Corp. v. Commissioner, supra at 280.  The distinctions between current expenses and capital expenditures "are those of degree and not of kind".  INDOPCO, Inc. v. Commissioner, supra at 86 (quoting Welch v. Helvering, 290 U.S. 111, 114 (1933)).  "Courts have adopted a practical case-by-case approach in applying the principles of capitalization and deductibility."  Norwest Corp. v. Commissioner, supra at 280.[3]  In this context, we see no need for us to cut through the thicket of the decided cases and detail, as the parties have sought to do, their facts and holdings in order to arrive at a decision herein.[4]  Rather, we shall discuss the facts as reflected in the record before us and arrive at a conclusion, recognizing that we shall be engaging in an exercise in line drawing, a difficult task which nevertheless is part of the daily grist of judicial life.  See Harrison v. Schaffner, 312 U.S. 579, 583 (1941); Russell Box Co. v. Commissioner, 208 F.2d 452, 454 (1st Cir. 1953); Allen v. Commissioner, 66 T.C. 340, 346 (1976).

The parties have stipulated:  (1) The relocation was accomplished in order to permit the use of the pipeline in the

---

[3]  See also 1 Bittker and Lokken, Federal Taxation of Income, Estates and Gifts, sec. 20.4.8, at 20-92 (2d ed. 1989).

[4]  As the Supreme Court has observed, the cases in this area "appear difficult to harmonize".  See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 86 (1992).

ordinary and normal course of petitioner's business; (2) relocation expenses, such as petitioner incurred, are commonly and ordinarily incurred in the pipeline business and are necessary in the operation of that business; (3) the relocation was not part of a general plan of rehabilitation and did not adapt the pipeline to a new use; and (4) the pressure, capacity, and use of the pipeline were the same before and after the relocation.  They disagree as to the differences in quality between the 1991 pipe and the 1968 pipe it replaced, and the impact of those differences on the useful life and the effect on the overall value of the pipeline.

The Route 83 relocation involved less than 1,000 feet of pipeline out of 25 miles of 16 inch pipeline, which was part of a 335-mile system.  See Fire Companies Bldg. Corp. v. Burnet, 57 F.2d 943, 944 (D.C. Cir. 1932) (this "is not a case of replacing a few feet of iron piping with brass piping, but rather the replacing of all iron piping in the hot-water system with a much more expensive material, which appreciably added to the value of the property.").  Regardless of whether the 1991 pipe is of better quality or has a longer life than the materials used in constructing the 1968 pipeline, we are satisfied that the Route 83 relocation, given its limited scope, did not materially add to the value of the pipeline or appreciably prolong the life of the 1968 pipe.  We are not persuaded otherwise by the analysis of

respondent's expert as to the impact of the differences in characteristics between the 1991 pipe and the 1968 pipe. The relocation herein involves the same kind of analysis that would cause us to treat the replacement of a small number of slate tiles in a roof as repairs, while requiring a replacement of the roof or a major portion thereof to be classified as capital in nature. Cf. Pierce Estates, Inc. v. Commissioner, 16 T.C. 1020, 1026 (1951), revd. on another issue 195 F.2d 475 (3d Cir. 1952); see Fire Companies Bldg. Corp. v. Burnet, supra. In a similar vein, we find respondent's reliance on Rev. Rul. 73-203, 1973-1 C.B. 146, and Rev. Rul. 82-12, 1982-1 C.B. 52, misplaced. Aside from the fact that such rulings do not have binding effect, see Northern Ind. Pub. Serv. Co. v. Commissioner, 105 T.C. 341, 350 (1995), affd. 115 F.3d 506 (7th Cir. 1997), both rulings involved replacement or relocation of substantial portions of public utility systems.

The purpose of the Route 83 relocation was simply to keep the 1968 pipeline in its normal, ordinary and efficient operating condition. Plainfield-Union Water Co. v. Commissioner, supra; see also Chicago, Burlington & Quincy R. Co. v. United States, 97 Ct. Cl. 264, 455 F.2d 993 (1972) (construction projects to protect and maintain rail embankments), revd. on another issue 412 U.S. 401 (1973); Polyak v. Commissioner, 94 T.C. 337, 347-348 (1990) (floorboard replacement limited to damaged sections). In

this connection, we find it significant that petitioner could not have removed and relocated 1,000 feet of 1968 pipe without disrupting its entire pipeline system.

Respondent describes the use of new pipe (the 1991 pipe) as "a controlling fact".  We think that, under the circumstances herein, respondent's reliance on this element is misplaced.  The courts have consistently recognized that the mere use of new materials does not prevent an expenditure from being classified as "repairs".  See United States v. Wehrli, 400 F.2d at 689; Niagara Mohawk Power Corp. v. United States, 214 Ct. Cl. 686, 558 F.2d 1379, 1388 (1977); Red Star Yeast & Prods. Co. v. Commissioner, 25 T.C. 321, 349 (1955); Buckland v. United States, 66 F. Supp. 681, 683 (D. Conn. 1946).  The key consideration is the overall purpose of the relocation and the context in which it occurred.

On the facts of this case, we hold that petitioner is entitled to a current deduction for the costs of the relocation.

To implement our holding and concessions,

Decision will be entered

under Rule 155.